JOHNSTON & BURNHAM, Inc., et al. v.
STATE et al.
No. 8493.

Court of Civil Appeals of Texas. Austin.
May 20, 1936.

Rehearing Denied June 10, 1936.

H. P. Smead, of Longview, for appellant Johnston & Burnham, Inc.

Mayfield, Grisham & Grisham, of Tyler, for appellant P. B. M. Oil & Refining Co.

Wm. McCraw, Atty. Gen., and Pat M. Neff, Jr., Asst. Atty. Gen., for appellee State of Texas.

Mayfield, Grisham & Grisham, of Tyler, for appellee Dominant Refining Co.

BLAIR, Justice.

Appellee state of Texas sued Dominant Refining Company and appellants Johnston & Burnham, Inc., and P. B. M. Oil & Refining Company, for sums aggregating $105,682.74, as excise or occupation tax due for November and December, 1935, under the Motor Fuel Tax Act of the 43d Leg. c. 44, p. 75, as amended by the Acts of the 44th Leg. c. 240, p. 558 (Vernon's Ann.Civ.St. art. 7065a—1 et seq.), and to foreclose the statutory lien on the refineries and properties devoted to or used in carrying on the occupation or business taxed. As ancillary to and in aid of the foreclosure of the lien, appellee sought, and on ex parte hearing obtained, the appointment of a receiver of said properties. Appellants, Johnston & Burnham, Inc., and P. B. M. Oil & Refining, each filed a motion to vacate the receivership, alleging that each had leased its refinery and equipment to the Dominant Refining Company, which was a "distributor" of the motor fuel under the taxing act, and was alone liable for the tax; that neither appellant was liable for the tax, nor were their respective refineries and properties leased to the Dominant Refining Company and taken charge of by the receiver subject to the purported statutory lien of the state. After a hearing, the motions to vacate the receivership were overruled; hence this appeal.

Appellee state alleged in detail the facts upon which it sought to fix the joint and several liability of appellant Johnston & Burnham, Inc., and the Dominant Refining Company for the entire amount of the tax in suit, and to fix the joint and several liability of appellant P. B. M. Oil & Refining Company for the amount of tax accruing in the operation of the refinery and equipment it had leased to Dominant Refining Company. In this connection, the state alleged that notwithstanding the fact that appellants Johnston & Burnham, Inc., and P. B. M. Oil & Refining Company had each executed a lease of their respective refineries and equipment to the defendant Dominant Refining Company, each of them was as a matter of fact engaged in the joint undertaking or enterprise or collusive operation of a motor fuel business, and were manufacturing, refining, and making first sales of motor fuel; and that the leases were fraudulent and made for the purpose of evading the payment of the

…

occupation tax due by the lessee of the said refineries. The state further alleged that, in any event, the refineries and properties of appellants Johnston & Burnham, Inc., and P. B. M. Oil & Refining Company were subject to the statutory lien as being property devoted to or used in the business of the distributor of the motor fuel under the terms of the taxing act.

Appellants predicate their appeal upon two propositions: First, that the receivership should have been vacated because neither of them was liable for the tax sought to be collected; and, second, that since they had made a bona fide lease of their respective refineries and properties to the Dominant Refining Company, such properties were not subject to the statutory lien provided by article 7065a—7, Vernon's Ann. Civ. St. which reads as follows: "All taxes, fines, penalties and interest due by any distributor to the State shall be a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated, upon all the property of any distributor, devoted to or used in his business as a distributor, which property shall include refinery, blending plants, storage tanks, warehouses, office buildings and equipment, tank trucks or other motor vehicles, stocks on hand of every kind and character whatsoever used or usable in such business, including crude oil or other materials for the manufacture, refining, blending or compounding of motor fuels and the refined products therefrom and the proceeds from the sale of such materials and refined products, and any other property of every kind and character whatsoever and wherever situated devoted to such use, and each tract of land on which such refinery, blending plant, tanks or other property is located, or which is used in carrying on such business."

■ Appellants construe this statute as providing for a lien to secure the payment of the taxes on the property of the distributor only. We do not so construe the statute, but construe it as fixing the lien on the refineries and properties devoted to and used in the occupation or business taxed without regard to actual ownership. There could have been no purpose for the Legislature providing that where the distributor owned the refinery and properties used in the occupation or business taxed same would be subject to the lien to secure the payment of the tax; and at the same time providing that the lien did not ex-tend to leased refineries and properties which were being operated by a lessee as the distributor. The legislative intent to fix the state's lien on all property devoted to or used in the occupation or business taxed without regard to ownership, is manifest from the language of the section quoted, and particularly so when interpreted in the light of other pertinent provisions and purposes of the taxing act.

Section 1 of the act of 1933, c. 44, as amended by Act of 1935, c. 240 (Vernon's Ann.Civ.St. art. 7065a—1) defines "motor fuel," who is a "distributor," and what is meant by the "first sale." Section 2 (Article 7065a—2) imposes an excise or occupation tax of 4 cents on each gallon of motor fuel sold at first sale. Section 3 of Act 1933 and sections 4 and 5 as amended by Act of 1935 (Vernon's Ann.Civ.St. arts. 7065a—3 to 7065—5) require that each distributor of motor fuel apply for a permit; that the comptroller shall issue same; and for forfeiture or suspension of such permit for violation of any provision of the act. Section 6, as amended by Act of 1935 (art. 7065a—6), provides that a bond or deposit in the sum of $1,000 to $25,000, the amount to be fixed in each instance by the comptroller, be made by each distributor. This bond or deposit manifestly had for its purpose only partial security for the payment of the tax, because as in the instant and many other cases the tax due for the taxing period far exceeds the amount of the bond or deposit required. Therefore, in addition to the bond or deposit requirement, section 7, as amended by Act of 1935 (Article 7065a—7) above quoted, fixed a "preferred lien * * * upon the property of any distributor, devoted to or used in his business as a distributor," and specifically defined the property covered by the lien as including refineries, blending plants, storage tanks, trucks, etc., devoted to or used in such business. This section further provided that "any other property of every kind and character whatsoever and wherever situated devoted to such use, and each tract of land on which such refinery, blending plant, tanks or other property is located, or which is used in carrying on such business," is subject to the state's lien. These provisions of the act are broad and comprehensive, and were clearly intended to apply to each or "any distributor" engaged in the taxed occupation or business, and indicate the legislative intent to fix the lien on any property devoted to or

used in the occupation or business without regard to actual ownership. Any other construction of the act would open the door to fraud, because by the mere expediency of leasing such property to irresponsible lessees the tax could be defeated. The instant case is illustrative. Appellee alleged and offered proof which tended to show that appellants and Dominant Refining Company were not only engaged in the joint business or enterprise of manufacturing, producing, and making first sales of the motor fuel, but that the leases on the refineries and properties devoted to or used in the taxed occupation or business were fraudulently made for the purpose of evading the tax.

Appellants base their main contention that section 7, above, fixed the lien only on the property of the distributor, because the words, "any distributor," and "all the property of any distributor, devoted to or used in his business as a distributor," denote the person whose property is subject to the lien. But, as above pointed out, these words denote as well the person who is engaged in carrying on the taxed business or occupation, and the remaining language of the section provides that the lien is to cover all property of every kind and character devoted to or used in the occupation or business taxed. Manifestly, the Legislature did not intend by the use of the words, "any distributor," to in any manner limit the tax lien to the property actually owned by the distributor or the person who had qualified as a distributor under the act. And in this connection it may be noted that the section does not contain the words, "any licensed distributor," or "distributor holding a permit," as stated in appellants' briefs. We construe the taxing act to fix the state's lien not only on the property of the distributor, but on any property devoted to or used in the taxed occupation or business without regard to actual ownership of same.

■ It is settled law that property used in a business may be constitutionally subjected to a lien for an excise or occupation tax on the business, although it is not owned by the person carrying on the business. This principle of law is clearly stated in 26 Ruling Case Law, page 392, as follows: "An excise tax may be made a lien on the property in connection with which the act, privilege or occupation taxed is performed, enjoyed or carried on. Thus an inheritance tax may be made a lien on the property transferred although an inheritance is an excise on the privilege of transfer and not a property tax. Property used in a business may be constitutionally subjected to a lien for an excise on the business although it is not owned by the person carrying on the business. The owner is not only chargeable with a knowledge of the law in respect thereto, but he is presumed to know the business there carried on, and to have let the property with knowledge that it might become encumbered by a tax imposed upon such business."

The following cases support the text and on principle govern this case: Hodge v. Muscatine County, 196 U.S. 276, 25 S. Ct. 237, 49 L.Ed. 477, sustaining 121 Iowa, 482, 96 N.W. 968, 67 L.R.A. 624, 104 Am. St.Rep. 304; State v. Ferris, 53 Ohio St. 314, 41 N.E. 579, 30 L.R.A. 218; Brown Shoe Co. v. Hunt, 103 Iowa, 586, 72 N.W. 765, 39 L.R.A. 291, 64 Am.St.Rep. 198.

■ Since we construe the statute as fixing a lien upon the refineries and properties used in connection with the taxed business or occupation, the appointment of the receivership was authorized under the facts alleged and proved, even though appellants Johnston & Burnham, Inc., and P. B. M. Oil & Refining Company were not personally liable for the taxes. Therefore, we will not discuss such personal liability further than to say that the pleadings and evidence adduced were sufficient and tended to support the claims of the state that appellants were engaged in the joint enterprise or business of manufacturing, producing, and making first sales of motor fuel in connection with or through the Dominant Refining Company, and were engaged as distributors of motor fuel; and that the leases in question were executed for the fraudulent purpose of evading the taxes sued for.

The judgment of the trial court will be affirmed.