The STATE of Texas, Appellant,

v.

Rex ROPE, Appellee.

No. 11539.

Court of Civil Appeals of Texas.

Austin.

Sept. 13, 1967.

Rehearing Denied Nov. 1, 1967.

Grace and Kerns B. Taylor, Asst. Attys. Gen., for appellant.

Lane, Savage, Counts & Winn, William V. Counts, Dallas, for appellee.

O'QUINN, Justice.

The State of Texas sued the operator of the Bridgeport Ballroom in Dallas County for delinquent admissions taxes, penalty and interest amounting to $3,874.19. The State made Rex Rope of Ellis County, the owner of the land and building where the ballroom was located, a party to the suit under provisions of Article 21.04(2), Chapter 21, Title 122A, Taxation-General, V.A.T.S. (Acts 1959, 56th Leg., 3rd C.S., ch. 1, p. 187), seeking to effect foreclosure of the tax lien on the Rope property.

The statute provides that the State shall have a prior lien for all delinquent taxes and penalties provided for in the chapter on admissions tax *"on all property used by the owner or operator of any place of amusement* as designated in this Chapter." (Emphasis added). Provision is also made for suit by the attorney general to collect the taxes and foreclose the lien.

There are several questions in this case, the foremost of which is whether the statute imposes a valid lien on the property of the landlord if the tenant, operating an amusement place on the premises, fails or refuses to pay the admissions tax.

In this case the State being unable to effect service on the operator, dismissed as to him and proceeded against the landlord. The record shows that the operator was running the business on the property under a written lease from the owner.

The case was tried before the court without the aid of a jury and on motions filed by both parties for summary judgment. The trial court overruled the State's motion for summary judgment and entered judgment for appellee, the owner of the property, with decree that the State take nothing.

Crawford C. Martin, Atty. Gen., George Cowden, 1st Asst. Atty. Gen., A. J. Carubbi, Jr., Staff Legal Asst. Atty. Gen., John R.

The State of Texas has perfected its appeal assigning six points of error. Appellee has replied with eight points contending in the main that the statute does not include property not owned by the operator and that if construed to include property not owned by the operator, the statute is unconstitutional.

We reverse the judgment of the district court and render judgment for the State.

The tax with which we are concerned is imposed by Article 21.02(4) of chapter 21. This Article reads as follows:

"(4) There is hereby levied a tax of one cent (1¢) on each ten cents (10¢) or a fractional part thereof paid as admission to dance halls, night clubs, skating rinks, and any and all other like places of amusements, contests, and exhibitions where the admission charged is in excess of fifty-one cents (51¢)." Acts 1959, 56th Leg., 3rd C.S., ch. I, p. 187; Art. 21.02(4), Ch. 21, Title 122A, Taxation-General, V.A.T.S.

Article 21.01 requires the owners and operators of places of amusement such as the business involved in this case to file with the state comptroller quarterly reports and pay to the state treasurer the tax in rates and amounts imposed by the statute. Article 21.03 requires the operators of amusements designated by this chapter to keep certain records of business operations and make the records available to the comptroller and the attorney general.

Article 21.04 of this chapter under the heading "Penalties" provides in pertinent part as follows:

"(2) The State of Texas shall have a prior lien for all delinquent taxes and penalties provided for in this Chapter on all property used by the owner or operator of any place of amusement as designated in this Chapter, and the Attorney General of the State of Texas may file suit for the collection of such tax and penalties in any court of competent jurisdiction in Travis County, Texas, and for the foreclosure of such lien, and may enjoin the operation of any such business until such taxes and penalties are paid."

Appellee contends that Article 21.04(2) does not place a lien upon any property except property belonging to the owner or operator of the place of amusement, and that the lien is limited to the property the owner or operator actually uses in the business. Appellee argues that the phrase "used by the owner or operator of any place of amusement" as employed in the statute has as its purpose the designation only of such of the taxpayer's property as may be used in the operation, as distinguished from other of his property not used in the business. On this premise, appellee asserts that the lien in this case would attach only to the "leasehold estate," since this was the only interest the operator had in the real property belonging to appellee.

We believe that this meaning does not derive from a correct construction of the statute. We think that the interpretation given the statute by appellee is contrary to the intention of the legislature in imposing the tax and in providing for the lien.

It is obvious from reading chapter 21, in the light of knowledge that is common to everyone, that collection of the admissions tax is attended with difficulties not encountered in the collection of most other types of taxes. The stock-in-trade of amusement businesses generally is a facility where customers may assemble, with such additional properties, mostly personal, as will aid in furnishing amusement or entertainment. Nothing tangible is produced or manufactured, little if any merchandise is sold, and inventories of goods are small or do not exist. The principal source of income is from admissions paid by customers for amusement or entertainment on separate occasions and usually on separate days.

Under these conditions the lien on all property used by the owner or operator in conducting the amusement business is an obvious, and perhaps the most practical

and effective, means of collecting the tax. It appears reasonable that the legislature, having proposed to place a tax on admissions, would be aware of the collection problems, and would provide such means as the legislature believed would enable the State to collect its taxes. The levy of a tax without adequate means of enforcing collection would be purposeless and unavailing.

A similar statute, with respect to a lien existing upon all property used in the business without regard to actual ownership, is the "Motor Fuel Tax" which has been construed to apply to all property used, whether or not owned by the operator. Article 9.08, Chapter 9, Title 122A, Taxation-General, V.A.T.S.; Acts 1959, 56th Leg., 3rd C.S., ch. 1, p. 187.

In Johnston & Burnham, Inc. v. State, Tex.Civ.App., Austin, 95 S.W.2d 144 (no writ), this Court in 1936 construed the Motor Fuel Tax Act (now Article 9.08, supra) and held the lien valid as to all property used in the business, even though not owned by the operator. In imposing the lien, the motor fuel statute fixed a "preferred lien * * * upon all the property of any distributor, devoted to or used in his business as a distributor." The article further provided that "any and all other property of every kind and character whatsoever and wherever situated devoted to such use, and each tract of land on which such refinery, blending plant, tanks or other property is located, or which is used in carrying on such business" was made subject to the state's lien.

In the Johnston & Burnham case this Court in speaking of legislative intent with respect to the lien stated:

"These provisions of the act are broad and comprehensive, and were clearly intended to apply to each or 'any distributor' engaged in the taxed occupation or business, and *indicate the legislative intent to fix the lien on any property devoted to or used in the occupation or business without regard to actual ownership.*" (Emphasis added). 95 S.W.2d 144, 145, col. 2, 146, col. 1.

This Court observed in the Johnston & Burnham case that "Any other construction of the act would open the door to fraud, because by the mere expediency of leasing such property to irresponsible lessees the tax could be defeated." 95 S.W.2d 144, 146, col. 1. The problem appears to have involved a fraudulent practice of operating motor fuel businesses through irresponsible lessees.

We find no evidence of fraud as such in this cause. The State was unable to effect service on the lessee, who also was the operator of the business and the person responsible for the tax. A similar situation exists in two of three other cases decided this same date. In three of the four cases, this case and two of the other three we have had under consideration, the operator appears unwilling or unable to accept responsibility for the tax and apparently is without means or property by which the State can realize collection of the tax from the operator. We think the facts in these cases underline the wisdom, as well as the intent, of the legislature in providing the lien as an effective means of preventing loss of the tax due the State.

In State v. Wynne, 134 Tex. 455, 133 S.W.2d 951 (dsmd. 310 U.S. 610, 60 S.Ct. 980, 84 L.Ed. 1388, reh. den. 310 U.S. 659, 60 S.Ct. 1094, 84 L.Ed. 1422), the Supreme Court of Texas approved the underlying principle of Johnston & Burnham v. State, supra, and observed that:

"Many courts hold that property used in a business may be subjected to a lien for an excise or occupation tax on the business carried on, although it is not owned by the person carrying on the business." 133 S.W.2d 951, 957, col. 2.

The Supreme Court cited authorities relied upon in the Johnston & Burnham case and quoted from the rule stated in 26 Rul-

ing Case Law, sec. 350, p. 392, to the effect that:

"Property used in a business may be constitutionally subjected to a lien for an excise on the business although it is not owned by the person carrying on the business. The owner is not only chargeable with a knowledge of the law in respect thereto, but he is presumed to know the business there carried on, and to have let the property with knowledge that it might become encumbered by a tax imposed upon such business."

The Supreme Court cited Hodge v. Muscatine County, 196 U.S. 276, 25 S.Ct. 237, 49 L.Ed. 477, and other authorities, including "103 A.L.R. 18, for an annotation of the many cases bearing upon this question."

Although we do not consider it a controlling factor, nor one determinative of the results in this case, it is observed that when the appellee in this case bought the real property upon which the ballroom was operated, he bought knowing that it was already being used for that purpose. Later, when it became necessary to replace the building, appellee built a new structure on the land and leased to the operator who incurred the tax with knowledge that the lessee would operate a club or ballroom on the premises.

■ The observation of the Supreme Court in the Wynne case, to the effect that the "Legislature has been compelled to resort" to other than the ad valorem tax as "methods of raising revenue to meet the demands of our expanding State government," is certainly not less valid today than it was in 1939. As said by the Supreme Court, "The burden of levying taxes rests on the Legislature, and that body has plenary power of prescribing the mode of taxation to raise revenue." 133 S.W.2d 951, 958, col. 2. "It is the duty of the courts to uphold such legislation," the Supreme Court said, "unless it clearly ap-

pears to violate some provision of our Constitution." 133 S.W.2d 951, 959, col. 1.

In Hodge v. Muscatine County, supra, the Supreme Court of the United States upheld the constitutionality of a lien fixed by an Iowa statute upon cigarette dealers. The lien was fixed "upon all property, both personal and real, used in connection with the business." The Supreme Court said that "It was within the power of the legislature to make the tax a lien upon the property whereon the business was carried."

■ Appellee argues that use of the simple phrase "on all property used by the owner or operator of any place of amusement" must be construed to limit the lien to such property the owner or operator of the business employs in the place of amusement, and limited to the property belonging to the owner or operator of the amusement. It seems clear that the lien was meant to attach to property "used" by the owner or operator of the place of amusement, but it was meant to include "all property." We cannot read into the statute, nor draw from its wording, any exception. By use of the words "all property," we believe the legislature meant to include both real and personal property without regard to ownership.

■ We conclude that this construction is permissible under the rule that a statute should be so construed as to permit in the fullest manner the accomplishment of the apparent policy and object of the legislature in enacting it. Countz v. Mitchell, 120 Tex. 324, 38 S.W.2d 770 (Tex.Comm. App., 1931, opinion adopted by Sup.Ct.).

In State v. Wynne, supra, the Supreme Court confirmed the rule of Johnston & Burnham v. State, supra, that the tax lien is valid upon all property used in the business regardless of ownership. In the Wynne case it was held that the State may also create a lien prior to all other liens, regardless of when the other liens were

created. In accord with this holding are Allied Finance Company v. State, Tex.Civ. App., Austin, 387 S.W.2d 435 (writ ref., n. r. e.); Gummelt v. Southwestern Indemnity Co., Tex.Civ.App., Waco, 363 S.W. 2d 379 (writ ref., n. r. e.).

The lien provision in the admissions tax statute is not novel. As we have already indicated, a similar lien remedy was employed in the Texas motor fuel tax act. In Iowa a statute levying an occupation tax on liquor dealers was upheld in which a lien was fixed on property used in connection with sale of liquors regardless of ownership. Newton v. McKay, 130 Iowa 596, 102 N.W. 827 (1906). An Oregon statute levying a poundage fee on operation of a fish cannery was upheld in 1939 in which a lien was fixed on machinery and equipment used· in the operation, even though the owner of the property had no interest in the cannery. State v. Swensk, 161 Or. 281, 89 P.2d 587. The Supreme Court of Ohio affirmed the same rule of law as early as 1887 in Anderson v. Brewster, 44 Ohio St. 576, 9 N.E. 683. In that case the Ohio court observed that the lien need not work to the detriment of the owner of the real property upon which the lien was fixed. "If he leases property adapted to the business contemplated in the statute," the court said, "he may stipulate with his lessee for an idemnity against any loss accruing to him from the statutory lien. He is presumed to take cognizance of the general laws of the state that are in force." 9 N.E. 683, 687.

The most recent assembly of authorities on validity of the statutory tax lien on property not belonging to the taxpayer but used in his business is found in 84 A.L.R. 2d 1090. The case of Territory of Alaska v. Craig Enterprises, Inc., Alaska, 355 P.2d 397 (1960) is reported with the annotation at 84 A.L.R.2d 1082. This case upholds validity of the lien, although the statute would not be retroactive in its application.

The American Law Reports comments that "The comparatively few cases dealing with the question are generally to the effect that the taxing authority may provide that a license, occupation, or privilege tax may be made a lien upon property used in the exercise of the license, occupation, or privilege but not owned by the taxpayer, although there is some authority to the contrary * * *" 84 A.L.R.2d 1090, 1091, col. 1. The case cited contra is State v. Lawton, 25 Wash.2d 750, 172 P.2d 465 (1946), involving a lien under the Unemployment Compensation Act.

The further comment is that "* * * it has been held that the imposition or enforcement of such lien does not constitute a denial of due process, or the taking of the property of one person for the payment of an obligation of another." 84 A.L.R.2d 1090, 1091, col. 2.

■ Application of Article 21.04(2) to appellee and his property does not violate the due process provisions of either the State Constitution or the Constitution of the United States. The restraints imposed by the Texas Constitution (Article I, section 19), Vernon's Ann.St. and by the Fifth and Fourteenth Amendments of the United States Constitution are substantially the same. Mellinger et ux. v. City of Houston, 68 Tex. 37, 3 S.W. 249.

The general rule is stated in American Jurisprudence as follows:

> "It is within the constitutional power of the legislature to make a license, occupation, or privilege tax a lien upon real property upon which a business is conducted, property kept, et cetera, although owned by a person other than the person against whom the tax is assessed." 51 Am.Jur., Taxation, sec. 1012, p. 884.

To this statement is added the specific application of the doctrine to the owner of property charged with notice of the business being carried on upon his property:

> "The owner is not only chargeable with a knowledge of the law with respect thereto, but he is presumed to know the

business there carried on, and to have let the property with knowledge that it might become encumbered by a tax imposed upon such business." 51 Am.Jur., Taxation, sec. 1012, p. 884.

In accord with these statements are Hodge v. Muscatine County, supra; Johnston & Burnham, Inc. v. State, supra; Territory v. Craig Enterprises, Inc., supra; Mirik v. Gims, 79 Ohio St. 174, 86 N.E. 880, 20 L.R.A.,N.S., 42; Brown Shoe Co. v. Hunt, 103 Iowa 586, 72 N.W. 765, 39 L.R.A. 291.

 The tax under Chapter 21 is denominated an admissions tax and the rate is in proportion to the gross receipts from the admission charges. The purpose of the tax is to raise revenue and not to restrict the pursuit of any occupation. Payment of the tax is not a condition precedent to the right to transact business, and liability for the tax is incurred only after operations have begun. It is not an ad valorem tax on the business, and the rate of the tax bears no relation to the nature of the enterprise. The admissions tax under decision of the Supreme Court is an occupation tax.

In Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896 (1937), the Supreme Court observed:

"The principle of distinction generally recognized is that when, from a consideration of the statute as a whole, the primary purpose of the fees provided therein is the raising of revenue, then such fees are in fact occupation taxes, and this regardless of the name by which they are designated." 110 S.W.2d 896, 899, col. 2.

More recently this rule was applied by the Supreme Court in Rouw Co. v. Texas Citrus Commission, 151 Tex. 182, 247 S.W. 2d 231, 234, col. 1, citing Hurt v. Cooper, supra, and Texas Co. v. Stephens, 100 Tex. 628, 103 S.W. 481 (1907).

 We find no discrimination or inequality of the admissions tax rendering its application to the facts of this case in violation of Article VIII, section 1, of the Texas Constitution. State v. Wynne, supra, 133 S.W.2d 951, 957, col. 1.

Validity of the lien provision of Article 21.04(2) has been put in issue by appellee under the claim that the caption of the legislative act is defective for failure to provide notice required by Article III, section 35, of the Constitution of Texas. This provision of the Constitution restricts legislative bills, other than appropriation measures, to containing "one subject, which shall be expressed in its title."

Appellee contends that nothing is found in the caption or title of the bill enacted into the admissions tax law concerning the tax lien.

The State brought its suit under Title 122A as enacted by passage of House Bill No. 11 in 1959. (Acts 1959, 56th Leg., 3rd C.S. ch. 1, p. 187). Under terms of the act itself, this legislation, which included Article 21.04, must be considered a revision by amendment of the former law (Acts 1953, 53rd Leg., ch. 49, p. 62), even though in form it enacts a new law and repeals the law of 1953. (Section 3 of House Bill No. 11).

The caption of H.B.No.11, as enacted in 1959, reads in part as follows:

"An Act revising and rearranging certain Statutes of Title 122 'Taxation' of the Revised Civil Statutes of Texas and certain other laws of this State relating to taxation into a new Title to be known as Title 122A 'Taxation-General' * * * revising Statutes levying the * * * *Admissions Tax,* miscellaneous occupation taxes, and miscellaneous excise taxes * * * *providing procedures for the administration and enforcement of such taxes and penalties for violations thereof* * * * providing a savings clause; providing a severability clause * * * providing for an effective date;

and declaring an emergency." (Emphasis supplied).

Appellee's position is that the language, "providing for procedures for the administration and enforcement of such taxes and penalties for violations," logically relates only to "new taxes" enumerated immediately preceding this clause in the caption. The basic and misleading aspect of the caption, appellee asserts, is that the caption does not specify what tax is being secured, by what kind of lien, and on what property. That the caption does not call attention to a lien on property not owned by the taxpayer is part of appellee's point of error.

Provisions similar to section 35 of Article III were contained in the earlier Constitutions of Texas. The Supreme Court very early adopted a rule of liberal construction. Breen v. Texas and Pacific Railway Co., 44 Tex. 302, "The section of the Constitution," the Court asserted, " * * * as has been uniformly held by this court, as well as all others where a like constitutional provision exists, is not to be given a strict or literal construction. To do so would defeat rather than accomplish the purpose for which it was incorporated into the Constitution." 44 Tex. 302, 305.

In the Breen case the statute under attack was entitled, "An Act to fix the venue in certain cases." In addition to fixing venue, the act directed how and upon whom process might be served in certain cases. The attack centered upon that part of the statute regulating venue. The Supreme Court held the statute valid. With reference to the provision of the Constitution limiting a bill to one subject and requiring that the subject of the bill "be expressed in its title," the Supreme Court said:

"But while the purposes for which this section was incorporated into the organic law have been kept steadily in view it has uniformly received a broad and liberal construction. And it has been often held to be a sufficient compliance with

its provisions, if the law has one general object which is fairly indicated by its title, though it may embrace different subjects which are connected with or appropriate for the accomplishment of this general object." 44 Tex. 302, 306.

The rule that a statute will not be strictly construed under this requirement of the Constitution has been extended expressly to include revenue acts passed by the legislature. City of Beaumont v. Gulf States Utilities Co., Tex.Civ.App., Beaumont, 163 S.W.2d 426 (writ ref., w. o. m.).

The act of 1959, "revising and rearranging certain Statutes of Title 122" and certain other laws relating to taxation "into a new Title to be known as Title 122A." is a law containing taxation as its subject. No other subject is incorporated, and the general object is fairly indicated in an extended and detailed caption enumerating the taxes imposed. All other subjects embraced in the law are connected with or are appropriate for the accomplishment of this general object. The fixing of liens is appropriately a part of the "procedures for the administration and enforcement of such taxes and penalties for violations."

We can discover nothing misleading about the caption of the 1959 tax act. We believe it clearly expresses the subject embraced within the law itself. All of the details and provisions of the act need not be expressed in the caption. Murray v. Reagan, 129 Tex. 206, 102 S.W. 2d 202 (Tex.Comm.App., opinion adopted by Sup.Ct., 1937). In fact, as was pointed out by the Supreme Court in the Breen case, supra, "If every detail necessary in accomplishing the general object to be effected by a law must be embraced in its title, one of the objects in view in this constitutional provision would be defeated, and all the advantages from having a title to a bill would be lost." 44 Tex. 302, 306.

Once the statute levied taxes, and this subject had been clearly announced in the caption, all other provisions of the law

were germane to matters of procedure, administration, and enforcement requisite to the accomplishment of the legislative purposes of the act itself. The description of these aspects of the tax law were adequate in the form stated in the caption.

The rule that impels this conclusion was stated by the Supreme Court in Johnson v. Martin, 75 Tex. 33, 12 S.W. 321, 324, as follows:

"This provision [of the Constitution] has been frequently construed to require only the general or ultimate object to be stated in the title, and not the details by which the object is to be attained. Any provision calculated to carry the declared object into effect is unobjectionable, although not specially indicated in the title."

The provision of Article 21.04(2) fixing a lien upon all the property used by the operator or owner of a place of amusement in connection with the admissions tax levied under chapter 21 of Title 122A, even if not specially indicated in the title of the 1959 act, is not objectionable as contrary to the requirements of Article III, section 35, of the Constitution. King v. Carlton Independent School District, 156 Tex. 365, 295 S.W.2d 408 (1956). When the caption states the general purpose of the act, this gives notice that all related and incidental matters may be contained in the body of the law itself. State ex rel. Garza v. Rodriguez, Tex.Civ.App., San Antonio, 213 S.W.2d 877, 879, col. 1 (no writ).

On appeal appellee raises the contention that Article 1.07, Title 122A, Taxation-General, V.A.T.S., as amended in 1961, repealed Article 21.04(2) so as to confine the State's tax lien for admissions taxes to the taxpayer's property. (Acts 1961, 57th Leg., ch. 104, p. 201).

The record does not show that appellee pleaded this issue or contention in the trial court. If properly pleaded and placed in controversy, the issue, involving as it does statutory history, would have justified or entailed introduction of evidence on the question. Appellee may not be heard to raise the issue for the first time on appeal.

In another cause, decided by this Court this date, the issue here raised by appellee was properly brought forward and we decided the issue contrary to the position taken by appellee in this case. See Miller et al. v. Calvert, Tex.Civ.App., 418 S.W. 2d 869.

As stated above, both the State and appellee moved for summary judgment in the trial court. There are no facts in dispute. Ordinarily when a summary judgment is reversed on appeal, the cause will be remanded for trial on the merits. But when both parties file motions for summary judgment and one of the motions is granted by the trial court, the court of civil appeals should determine all questions presented. If error is found requiring reversal, the appellate court should render the judgment which the trial court should have rendered. Lilac Variety, Inc. v. Dallas Texas Company, Tex.Civ.App., Dallas, 383 S.W.2d 193 (writ ref., n. r. e.); Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396 (1958).

The State pleaded its cause of action against appellee, Rex Rope, for foreclosure of the tax lien against property owned by appellee and used as a place of amusement operated on the property by the named operator and taxpayer as the Bridgeport Ballroom or Club. The State attached as an exhibit to the petition a description of appellee's property. The amount of taxes due and unpaid was shown to be $3,874.19 by certified claim or audit of the comptroller, under seal, and duly sworn to and authenticated. Incorrectness of the claim was not shown. The certified claim was admissible in evidence and became prima facie evidence of the contents of the claim. (Article 1.08, Title 122A, Taxation-General, V.A.T.S.).

Although appellee denied by unsworn pleadings that the taxes constituted a claim against his property, no controverting affidavit or answer to the State's motion for summary judgment refuted the certified claim. Appellee had the burden to show the tax levy was incorrect, excessive, illegal or arbitrary if the statutory presumption was to be overcome. The further burden was upon appellee to show that the levy worked to his substantial injury. State v. Federal Land Bank, 160 Tex. 282, 329 S.W. 2d 847 (1959); City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414 (1954).

Appellee did not controvert the State's motion for summary judgment in any manner. In effect appellee admitted the facts alleged in the State's sworn affidavits supporting motion for summary judgment. Farmer's State Bank v. First State Bank of Liberty, Tex.Civ.App., Waco, 317 S.W.2d 768 (no writ). Pleadings alone can not show that there is a genuine issue of fact so as to prevent a summary judgment. Schepps v. American District Telegraph Co., Tex.Civ.App., Dallas, 286 S.W. 2d 684 (no writ).

Appellee's motion for summary judgment incorporated exhibits showing his ownership of the property and the lease to the operator or owner of the amusement business. Appellee showed by affidavit that his property was operated as a night club and that at all pertinent times he knew his property was used as a place of amusement. Appellee's constructive knowledge of the tax statutes pertaining to admissions taxes and the liens fixed upon all property used in the business will be conclusively presumed.

It appears that the only questions before the trial court were questions of law. There was no material ultimate fact question in controversy or dispute upon the showing made by the parties before the court.

We conclude that the trial court erred in granting the motion of appellee for sum-

mary judgment and in denying the State's motion for summary judgment.

The judgment of the district court is reversed and judgment is here rendered for the State.

Reversed and rendered.