**The STATE of Texas, Petitioner,**

v.

**Fred SMITH, d/b/a Aragon Ballroom, et al., Respondents.**

**No. B-588.**

Supreme Court of Texas.

Nov. 6, 1968.

Rehearing Denied Dec. 11, 1968.

Crawford C. Martin, Atty. Gen., J. H. Broadhurst, Asst. Atty. Gen., Austin, for petitioner.

Small, Herring, Craig, Werkenthin & Shannon, Fred B. Werkenthin, Austin, for respondents.

STEAKLEY, Justice.

The opinion of the Court delivered July 24, 1968, is withdrawn and the following is substituted therefor:

This case presents for review a number of problems concerning Article 1.07, as amended in 1961, and Article 21.04 of Title 122A, Taxation-General, Volume 20A, Vernon's Annotated Texas Civil Statutes. The Court of Civil Appeals has given exhaustive consideration to the questions presented in this case, 420 S.W.2d 204, and in the related case of State v. Rope, 419 S.W.2d 890. See also Miller v. Calvert, 418 S.W.2d 869, no writ history.

The facts here involve the operation of an amusement by Respondent, Fred Smith, under the name of the Aragon Ballroom in Dallas County. The State sued to collect delinquencies in the payment of the admission taxes imposed by Articles 21.01 et seq., alleged to be for the periods of time of April 1, 1957, through December 31, 1960, and April 1, 1963, through March 31, 1964, in the respective sums of $29,000 and $11,750. Smith was the owner of the real estate properties used in the operation of the amusement, but such properties were subject to a vendor's lien and deed of trust held by Respondent, C. D. Wyche. The State sought to foreclose a tax lien on such properties. Notice of the lien had not been filed in the county where the properties were located. Judgment for the State was rendered by the trial court for the full amount of the alleged delinquencies, penalty and interest, and for foreclosure of the tax lien asserted by the State. The trial court also declared the tax lien to be superior to those held by Wyche. The Court of Civil Appeals (a) reversed the judgment of the trial court in

favor of the State for admission taxes incurred in the operation of Aragon Ballroom for the period of time from April 1, 1957, through December 31, 1960, and remanded "that portion of the cause" for further proceedings; and (b) affirmed the judgment of the trial court in favor of the State for admission taxes incurred during the period of time from April 1, 1963, to March 31, 1964, but reversed and rendered the judgment of the trial court foreclosing the state tax lien for this period.

The State and Smith and Wyche filed applications for writ of error and both were granted. The major holding of the Court of Civil Appeals under attack by the State is that the lien to secure the payment of the admission taxes imposed by Article 21.04(2) is subject to the filing and recording requirement of Article 1.07, as amended, and such lien becomes effective when the notice required by Article 1.07 is filed and recorded. The major holdings under attack by Smith and Wyche are (a) the notice requirement has no application to admission taxes which accrued prior to the effective date of the 1961 amendment; (b) the admission tax lien covers property interests used in the amusement other than that owned by the operator (see also State v. Rope); and (c) the title of the 1959 act codifying the tax statutes carried adequate notice of the admissions tax lien under the requirements of Article 3, Section 35, of the Texas Constitution, Vernon's Ann.St. (see also State v. Rope). The State also complains of the holding that there was no support in the evidence for the tax claim for the earlier period of April 1, 1957, to December 31, 1960; whereas, Smith and Wyche complain of the holding that there was supporting evidence for the later period of April 1, 1963, to March 31, 1964. We affirm.

We consider first the problem most emphasized in importance by the State. It is whether, as the State contends, the filing of notice requirement imposed by the 1961 amendment is limited to taxes for which a lien is not otherwise authorized

in Title 122A, and hence inapplicable to the specific lien provided by Article 21.04; or, as Smith and Wyche contend, is also a prerequisite to the effectiveness of the lien securing the payment of admission taxes against real estate used by the owner or operator of a place of amusement.

The statutory situation is this. In 1959 the Legislature revised and rearranged the taxation Title 122 of the Revised Civil Statutes of Texas into a new title to be known as Title 122A "Taxation-General."[1] Article 1.07(1) of Chapter 1 captioned "General Provisions" provided:

"All taxes, fines, penalties and interest due by an individual, firm, association, joint stock company, syndicate, copartnership, corporation, agency, trustee, or receiver to the State of Texas, by virtue of this Title, shall be a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated, upon all the property of any individual, firm, association, joint stock company, syndicate, copartnership, corporation, agency, trustee, or receiver. This lien shall be cumulative, and in addition to the liens for taxes, fines, penalties, and interest now provided by law, and shall attach as of the date such tax or taxes are due and payable."

Chapter 21 of Title 122A contained the admissions tax. Article 21.04(2) is the lien provision:

"The State of Texas shall have a prior lien for all delinquent taxes and penalties provided for in this Chapter on all property used by the owner or operator of any place of amusement as designated in this Chapter, and the Attorney General of the State of Texas may file suit for the collection of such tax and penalties in any court of competent jurisdiction in Travis County, Texas, and for the foreclosure of such lien, and may enjoin the opera-tion of any such business until such taxes and penalties are paid."

The additional requirement that notice of the tax lien authorized by Article 1.07 be filed and recorded was added to Title 122A by legislative amendment in 1961.[2] The form of the amendment was the inclusion of the following italicized provisions in the body of Art. 1.07(1), together with additional provisions in other sections for the recording and indexing of state tax liens in the office of the county clerk:

"All taxes, fines, penalties and interest due by an individual, firm, association, joint stock company, syndicate, copartnership, corporation, agency, trustee or receiver to the State of Texas, by virtue of this Title, shall be a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated, *subject, however, to the modification hereinafter contained,* upon all the property of any individual, firm, association, joint stock company, syndicate, copartnership, corporation, agency, trustee, or receiver. This lien shall be cumulative, and in addition to the liens for taxes, fines, penalties, and interest now provided by law, and shall attach as of the date such tax or taxes are due and payable. *Provided, however, before the taxes provided for in this law shall become a lien on real estate, notice thereof must be filed in the county where the real estate is located on which the lien is desired as provided in Article 1.07A of this Act. Such lien shall not be valid or effective as against any mortgagee, holder of a deed of trust, purchaser, pledgee, or judgment creditor acquiring title, lien or other right or interest before such notice has been so filed and recorded."*

The effect and coverage of Article 1.07 as a part of Chapter 1 captioned "General Provisions" of the 1959 codifica-

---

1. Acts 1959, 56th Leg. 3rd C.S., p. 187, ch. 1.

2. Acts 1961, 57th Leg., p. 201, ch. 104.

tion is entirely clear. The statute did not itself impose a tax but provided for a preferred lien to secure the payment of all taxes due "by virtue of this Title," i. e., Title 122A, which was "first and prior" to all other liens of any nature regardless of the time of origin. The accrual of the tax obligation—becoming "due and payable"— was the only condition to attachment of the lien, and it was a lien upon all the property of the taxpayer. It was cumulative and in addition to tax liens otherwise provided by law. The 1961 amendment of Article 1.07 is equally clear. It provides that taxes will not become a lien on real estate until notice thereof is filed in the county where the real estate is located, and that the lien will not be valid or effective against interests in the property acquired before the filing and recordation of the notice. As to the problem at hand, the range of the 1961 amendment as to liens on real estate was the same as the statute it amended. This legislative purpose is reflected in and corroborated by the language of the amendment defining its application to the taxes provided for "in this law" which refers to the coverage of Article 1.07 which, in turn, is written in terms of "All taxes, fines, penalties and interest due by an individual * * * by virtue of this Title," i. e., Title 122A, the whole body of the statutory law codified in 1959. The preferred lien for the taxes due *by virtue of this title* was expressly subjected by the 1961 amendment to *the modification hereinafter contained,* namely the added requirement for filing of the tax lien notice. Additionally, the caption of the 1961 amendment recites it to be "An Act amending Title 122A, Taxation–General, * * * providing for recording of lien of all taxes provided for in this Act due the State of Texas before the taxes shall be a lien on real estate * * *." The purpose of the amendment is further described in the emergency clause as being "The need for a method of determining the status and ownership of real property and real property liens." We regard as inescapable the conclusion that the Legislature intended the filing of notice requirement of the 1961 amendment to apply to the tax liens on real estate specifically authorized in Article 21.04(2) of Title 122A. The language of the amendment is all inclusive and is devoid of any indication that its provisions are inapplicable to the admissions tax lien.

The State argues the difference in the coverage of the two statutes in support of its position, i. e., Article 1.07, written in terms of "all the property" of any taxpayer, whether or not used in the taxable activity, in contrast to Article 21.04(2), written in terms of "property used by the owner or operator of any place of amusement," whether or not owned by him. So, says the State, the thrust of the lien provisions in the two statutes is different, with each serving a separate and unrelated purpose in accordance with its internal provisions. In support of its position, the State cites certain other specific lien articles in Title 122A [3] which it asserts are for the same reasons immune from the filing requirements contained in the 1961 amendment to Article 1.07. We express no opinion as to these other lien statutes, particularly those governing the lien securing the inheritance tax, Articles 14.01 et seq. But we are unable for the reasons we have stated to sustain the position of the State that the Legislature intended that the lien on real estate authorized in Article 21.04(2) would not be subject to the requirements of Article 1.07 as amended.

■ Respondents further urge that the 1961 amendment imposing the lien filing requirement has an invalidating retroactive effect on amusement tax liens which had attached prior to the effective date of the amendment and which were not filed and recorded. They argue as a matter of statutory construction that such a retroactive purpose is suggested by the provision that the amendment should have no application to litigation pending in any court of

---

3. See e. g. Articles 3.08, 4.07, 7.15, 8.09, 9.08, 10.17, 14.19 and 18.03, of Title 122A.

competent jurisdiction. However, Article 1.07 expressly provided before the 1961 amendment that the state tax lien attached as of the date the tax became due and payable, and would be "a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated." The lien securing the payment of amusement taxes becoming due and payable prior to the effective date of the 1961 amendment was therefore complete and subsisting at such time. The amendment of Article 1.07 does not purport to extinguish prior liens which had thus attached, and the additional requirements of filing and recordation were not made applicable to them.

The State indicates some uncertainty as to the holding of the Court of Civil Appeals in another retrospective sense, i. e., whether the effect of the amendment of Article 1.07 is that once filed and recorded the amusement tax lien relates back and becomes superior to contractual liens or other pre-existing interests arising subsequent to the effective date of the amendment but prior to the filing and recordation of the state lien. We construe the holding of the Court of Civil Appeals to be that the lien of the state arises at the time of the filing and recordation of notice, with the question of priorities determinable as of then. We agree with this construction of the statute. The amendment expressly provides that the state lien shall not be valid or effective as to the enumerated pre-existing interests before the lien notice has been filed and recorded.

We also agree with the intermediate court here, and in State v. Rope, that the phrase "property used," appearing in Article 21.04(2), is unambiguous and quite clearly includes property employed by the owner or operator in the operation of the amusement in which he holds less than full ownership. Cf. State v. Wynne, 134 Tex. 455, 133 S.W.2d 951, at pages 957,

959, holding that property used in a business may be subjected to a lien for an excise or occupation tax on the business carried on, although it is not owned by the person carrying on the business; that a legislative declaration that the tax lien of the State would be superior to contractual liens accuring prior to the passage of the statute is a valid exercise of the power delegated by the Constitution to the Legislature to levy taxes; and that the power of amendment, if such is needed, rests exclusively with the Legislature. Cf. also International Harvester Credit Corp. v. Goodrich, 350 U.S. 537, 76 S.Ct. 621, 100 L.Ed. 681. Here the Legislature evidently expanded the property subject to the lien to secure payment of the state amusement tax because of the nature of the taxed activity of which one holding a lien or other interest would have notice. We perceive no basis for construing the phrase "all property used by the owner or operator of any place of amusement" as if the Legislature had added the words "and owned by him" and pretermit further discussion in view of the adequate consideration given the question by the Court of Civil Appeals in State v. Rope, supra, and reaffirmed here.

Respondents also attack the adequacy of the caption of the 1959 codification under the constitutional requirement that the subject of a legislative bill be expressed in its title. This problem was considered at length and the sufficiency of the caption upheld by the intermediate court in State v. Rope and reaffirmed here. We approve these holdings. See Ex Parte Jimenez, 159 Tex. 183, 317 S.W.2d 189, 194. Additionally, Respondents in their application for writ of error urge a deficiency in the title to the amendatory act of the Legislature in 1953[4] originally authorizing the lien on property used by the owner or operator of a place of amusement which, in turn, was carried forward in Article 21.04(2) of the 1959 codification. The asserted captional deficiency in the 1953 amendment is the absence of express notice

4. Acts 1953, 53rd Leg., p. 62, ch. 49.

that the admissions tax lien would act upon property used in the amusement and hence in some circumstances upon property interests other than of the owner or operator, which deficiency vitiates the caption to the 1959 act. The contention is novel, and we are not cited to any decision in point to the problem. We are of the view, however, that resolution of caption sufficiency and germaneness should not be fragmented between the owner and operator of the amusement business and those holding interests in the property employed in the taxed activity. And, further, that the sufficiency of the caption of the act codifying the tax statutes in Title 122A as to the admission tax lien is determinable by its own terms and is not to be measured by that of the predecessor statutes. It would be anomalous to say that the caption of an amendatory act meeting the requirements of the Constitution, and hence carrying notice to those affected thereby, would nonetheless be invalidated because of possible infirmities in past legislative enactments.

■ Finally, and for the reasons stated, we agree with the holding of the intermediate court that the judgment for the state tax claim against Respondent Smith for the period April 1, 1957, to December 31, 1960, is insupportable under the evidence offered by the State. No attempt was made as to these taxes to utilize the Article 1.08 prima facie evidence procedure of a claim certified by the Comptroller, and the claim was not otherwise established by competent evidence.

Article 1.08 of Title 122A provides:

"Art. 1.08 Certified Claim as Evidence

"If any person, firm, corporation, or association of persons engaging in or pursuing any occupation on which, under the laws of this State, an occupation tax is imposed, who fails or refuses to pay such tax, and it becomes necessary to intervene in any manner for the establishment or collection of said tax claims or penalties, a claim showing the amount of tax due the State, certified to by the Comptroller of Public Accounts or his chief clerk, shall be admissible in evidence in such proceedings and shall be prima facie evidence of the contents thereof; provided, however, that the incorrectness of said claim may be shown."

■ The judgment for the tax claim for the later period of April 1, 1963, to March 31, 1964, is supported by the certificate of the Comptroller, and Respondents made no attempt to show the claim to be otherwise than correct. We disagree with the contention of Respondents that the certified claim procedure authorized by Article 1.08 is unavailable in an original suit instituted by the State to collect deliquent tax claims and penalties, notwithstanding its availability when the State sues in the form of an intervention in a pending proceeding for the identical purpose. We have no difficulty in holding that the filing of suit to collect deliquent taxes is a situation where it has become necessary for the State to intervene within every reasonable intendment of the statute and accordingly agree with the Court of Civil Appeals in its more extended consideration of the question.

The motion for rehearing of Respondents, Fred Smith and C. D. Wyche, is sustained in part and overruled in part. The judgment entered herein on July 24, 1968, is set aside, and the judgment of the Court of Civil Appeals is affirmed.

SMITH, J., dissenting.

REAVLEY, J., not sitting.

SMITH, Justice (dissenting).

I respectfully dissent. This dissent, however, is limited to the holdings which are adverse to the contentions of Respondents, Fred Smith, et al., in the following particulars.

(1) The Court is in error in upholding the judgment of the Court of Civil Appeals wherein that court held that the

1961 amendment to Article 1.07 operates prospectively only.

(2) The Court is in error in holding that Article 21.04 creates a lien in behalf of the State superior to the interest of petitioner-respondent, C. D. Wyche, the holder of a prior existing vendor's lien and deed of trust.

(3) The Court is in error in failing to hold that Article 21.04 does not fix a lien on any interest in real estate except the interest of the owner or operator of the place of amusement.

The 1961 amendment to Article 1.07 added the following language.

"Provided, however, before the taxes provided for in this law shall become a lien on real estate, notice thereof must be filed in the county where the real estate is located on which the lien is desired as provided in Article 1.07A of this Act. Such lien shall not be valid or effective as against any mortgagee, holder of a deed of trust, purchaser, pledgee or judgment creditor acquiring title, lien or other right or interest before such notice has been so filed and recorded."

Since the amendment was adopted in order to provide a means of perfecting a lien on real estate in favor of the State it is unreasonable to conclude that it was the intention of the Legislature that the 1961 amendment operate prospectively only. By failing to hold that the 1961 amendment is to be given retroactive effect, the Court has, in effect, held that the State's tax lien statement, when properly filed, operates retroactively to impress a superior lien on the interests of lien holders such as Wyche. Not only that, the holding in this case is based upon the holding of the same court in Miller, et al. v. Calvert, Comptroller, et al., 418 S.W.2d 869 (Tex. Civ.App.1967, no writ) and State of Texas v. Rope, 419 S.W.2d 890 (Tex.Civ.App. 1967, writ filed) wherein the effect of the holding was to allow the State to take the property of landlords for taxes owed by lessees. If these holdings are allowed to stand, it simply means that purchasers of real property in Texas on which the various tax occupations and industries are carried on or have been carried on will be subjected to the payment of taxes which were unknown to the owner who sold the property, much less a purchaser thereof.

Article 1.07(1), as pointed out by the Court, provides that before the taxes "provided for in this law shall become a lien on real estate, notice thereof must be filed in the county where the real estate is located on which the lien is desired as provided in Article 1.07A of this Act." It should also be noted that the caption of Article 1.07, Title 122A, as amended by the Legislature in 1961, announces the purpose of "providing for recording of lien of all taxes provided for in this Act." When the Legislature used the words "this Act," it was not referring only to the amendatory Act of 1961, but it was referring to all of Title 122A. This conclusion is inescapable when it is recognized that the 1961 amendment does not provide for *any* taxes. For the same reason, the words "this law" in the body of the Act could not refer only to the amendatory Act of 1961, since there are no taxes provided for in either of Articles 1.07, 1.07A or 1.07B. These articles are entirely general remedial and procedural provisions. These articles were enacted in 1961, to supply procedural and remedial provisions which were entirely absent in the original 1959 Act. The very purpose of the 1961 amendment of Article 1.07, and the enactment of the new Article 1.07A and 1.07B was to prevent clouds being cast upon the type of property involved in this case. This purpose is clearly expressed in the emergency clause of the 1961 Act. The clause reads:

"The need for a method of determining the status and ownership of real property and real property liens * * * create an emergency."

Thus, it is seen that the declared purpose of the Legislature will be defeated by the holding that Articles 1.07, 1.07A, and 1.07B

apply only prospectively. Rather than establishing the status of ownership of real property, the holding will lead to confusion primarily for the reason that title examiners will be compelled to make an independent investigation apart from the examination of an abstract of title to determine whether or not the subject property is free from a tax claim of the State of Texas arising out of Article 21.04 or any other State tax liens arising out of transactions prior to the 1961 amendment. To compel such procedure is to cause a departure from the well established rules governing title examinations. There is no authority for such radical departure. However, this Court is upholding a decision of the court of civil appeals which refused to hold that the Legislature intended to give retroactive effect to the 1961 amendment to Article 1.07, merely because the lien asserted by the statutes was essential to enforcement and collection of the tax. The Court of Civil Appeals based its conclusion largely on the proposition that there was an absence from the amendment of an express declaration by the Legislature of an intent to distinguish prior liens. Here again, the holding fails to recognize that the dominant purpose was to free real estate transactions from all hidden unasserted State tax liens. Common sense dictates that the construction gives the 1961 amendment to Article 1.07 by the Court not only defines the intention of the Legislature, but creates two rules—one applicable to liens prior to 1961, and one applicable to liens thereafter. In such a situation, how can the declared purpose "to determine the status of [Texas] real property and real property liens" be accomplished?

The rule of interpretation followed in the case of City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273 (1951) is applicable here. There the Court said: "If a statute is curative or remedial in its nature, the rule is generally applied that it be given the most comprehensive and liberal construction possible. It certainly should not be given a narrow, technical construction which would defeat the very purpose for which the statute was enacted." It appears that this Court, in approving the holding of the intermediate court, has ignored a cardinal principle that the chief function of the Judiciary is that of interpretation. In West Coast Hotel Co. v. Parrish, 300 U.S. 379, 404, 57 S.Ct. 578, 587, 81 L.Ed. 703 (1937) the Court said: "The judicial function is that of interpretation; it does not include the power of amendment under the guise of interpretation."

This rule and others will now be discussed in connection with the other questions being considered, i. e., whether or not Article 21.04 fixes a lien on any interest in real estate except the interest of the owner or operator of the place of amusement, and whether or not Article 21.04 creates a lien in behalf of the State superior to the interest of the lienholder, Wyche. These two questions are encompassed in one general question: Does the phrase "all property used" in Article 21.04 imply that the State's lien is to apply to all property utilized in a place of amusement regardless of ownership?

The pertinent langauge of Article 21.04 is as follows:

"The State of Texas shall have a prior lien * * * on all property used by the owner or operator of any place of amusement as designated in this Chapter * * *"

The Court has approved the holding of the Court of Civil Appeals that the Legislature, in providing that the lien shall be "on all property used by the owner or operator of any place of amusement" meant to invoke a lien so as to be effective against the interest of any and all persons in and to real property that may be used by the owner or operator in such place of amusement. This Court, in approving such holding, apparently approves the reasoning of the intermediate court, or at least it does not disapprove the reasons in rejecting the contention of Wyche that Article 21.04(2) does not place a lien upon any property except property belonging to the owner or operator of the

place of amusement, and that the lien is limited to the property the owner or operator actually uses in the business. The reasons assigned are to be found in the case of State v. Rope, 419 S.W.2d 890 (Tex.Civ. App.1967, writ filed).[1] There the Court said:

"It is obvious from reading chapter 21, in the light of knowledge that is common to everyone, that collection of the admission tax is attended with difficulties not encountered in the collection of most other types of taxes. The stock-in-trade of amusement businesses generally is a facility where customers may assemble, with such additional properties, mostly personal, as will aid in furnishing amusement or entertainment. Nothing tangible is produced or manufactured, little if any merchandise is sold, and inventories of goods are small or do not exist. The principal source of income is from admissions paid by customers for amusement or entertainment on separate occasions and usually on separate days."

These are the reasons upon which the intermediate court based its conclusion that "[i]t appears reasonable that the legislature, having proposed to place a tax on admissions, would be aware of the collection problems, and would provide such means as the legislature believed would enable the State to collect its taxes. The levy of a tax without adequate means of enforcing collection would be purposeless and unavailing."

The Court of Civil Appeals, as well as this Court, does cite the case of the State v. Wynne, 134 Tex. 455, 467, 133 S.W.2d 951, 957 (1939), wherein this Court observed that "[m]any courts hold that property used in a business may be subjected to a lien for an excise or occupation tax on the business carried on, although it is not owned by the person carrying on the business." Regardless of the holding in *Wynne*, this Court should not uphold the imposition of a lien

for taxes upon real property interests of a person who is not personally subject to the tax, unless it is clear from the terms of the statute that the Legislature intended that a person not connected with the business and who has no notice by recording or otherwise of the tax, shall have his property subjected to the lien. This, in effect, is what the State is asking this Court to do. The State contends that Articles 21.01–21.04, Title 122A, Vernon's Annotated Civil Statutes, together with other excise or occupation taxes having individual lien provisions, create a statutory tax lien. The State contends that this Court should hold that the tax lien can be legally impressed without notice, and that since no uniformly applicable statute of limitations is provided for such lien, its claim may be asserted and lien established at any time, whether it be ten, twenty, or fifty years after the tax claim accrued. When the Legislature used the phrase "all property used," it definitely knew that under Article 21.01, only the "owner or operator" of the place of amusement owed the tax. Wyche has not been held personally liable for the tax. It is clear that the Legislature meant to place a limitation as to property to be subjected to the lien. By using the limiting language "all property used", it meant to exclude all other property owned by the owner or operator of the place of amusement. By the adoption of the 1961 amendment to Article 1.07(1) and the new Articles 1.07A and 1.-07B, the Legislature made it clear that a lien shall not attach to the owner's or operator's property used in connection with the place of amusement, unless the lien has been recorded. Absent notice by recordation, the 1961 amendment not only prevents the State's lien that might otherwise be created by Article 21.04 from being superior to existing deeds of trust and vendor's liens, but excludes any lien even as against the owner or operator of the place of amusement much less the owner of property not engaged in the amusement business. To apply the holding in *Wynne* to

---

1. The Court of Civil Appeals' opinion in this case does not deal specifically with

this question. It merely refers to its holding in *Rope*.

this case would be to allow the Court, under the guise of Judicial interpretation, to, in fact, amend the statute. To hold as the State would have us hold, that a person who is not personally subject to the tax, but whose only connection is the fact that he owns or purchases land which at some time in the past has been used for one of the purposes enumerated under the articles on amusement taxes herein discussed, would be in violation of the due process provisions of the Constitution of the United States, Amend. XIV, § 2, and the Constitution of Texas, Article I, §§ 16, 17 and 19. See International Harvester Credit Corp. v. Goodrich, 350 U.S. 537, 76 S.Ct. 621, 100 L.Ed. 681 (1955); Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439 (1932); Schlothan v. Territory of Alaska, 276 F.2d 806, 362 U.S. 990, 80 S.Ct. 1079, 4 L.Ed.2d 1022 (1960); Territory of Alaska v. Craig Enterprises, Inc., 355 P.2d 397, 84 A.L.R.2d 1082 (Alaska Sup.1960).

For the reasons stated, the judgments of the lower courts should be affirmed in part and reversed and rendered in part.