### P. M. OLLIVIER ET AL. V. CITY OF HOUSTON.

#### No. 845. Decided January 11, 1900.

**Constitutional Law—Releasing Debt to City—Taxes—Limitation.** ·

Section 55 of article 3 of the Constitution of the State, which prohibits the Legislature from extinguishing any obligation to the State or a municipality, renders void a law empowering defendants to plead limitation in pending suits by a city for taxes due more than four years before the suit began. (P. 211.)

QUESTION CERTIFIED from the Court of Civil Appeals for the First District, in an appeal from Harris County.

*Bullitt & Louis* and *Joe M. Sam,* for appellants.—By section 17 of the Bill of Rights all privileges granted by the Legislature or created under its authority remain subject to its control, and the power to levy and collect taxes by a municipal corporation is a privilege granted to it by the Legislature, and it may at any time, and in any way it sees fit, exercise this control over this privilege. Bill of Rights, sec. 17; Charter of City of Houston, sec. 40, Laws of 1899; Alley v. Denson, 8 Texas, 297; Bass. v. Fauntleroy, 11 Texas, 350; Walker v. Tarrant County, 20 Texas, 16; Blessing v. Galveston, 42 Texas, 641; Weekes v. Galveston, 51 S. W. Rep., 544; City of Covington v. Kentucky, decided Feb. 20, 1899, Supreme Court U. S.; Demoval v. Davidson County, 10 S. W. Rep., 353; Meriwether v. Garrett, 12 Otto, 472; City of Augusta v. North, 2 Am. Rep., 55; Cool. Const. Lim., secs. 192, 379, 380, 383; 15 Am. and Eng. Enc. of Law, pp. 985, 986.

A retroactive law is one that takes away and impairs vested rights, acquired under existing laws, in respect to transactions or considerations past. In so far as it may be concerned in determining this cause, and where a privilege is granted by the Legislature on the expressed condition that it shall always be under its control, the special powers conferred upon them are not vested rights—being wholly political—as against the State, as this power only exists during the will of the Legislature. Hamilton v. Avery, 20 Texas, 612; Blessing v. Galveston, 42 Texas, 657; Graham v. Greenville, 67 Texas, 65; City of St. Louis. v. Shields, 52 Mo., 351; Mellinger v. City of Houston, 67 Texas, 47; 1 Desty on Tax., sec. 56, pp. 265, 266; 6 Am. and Eng. Enc. of Law, 2 ed., 938, 939; City of Sherman v. Langham, 42 S. W. Rep., 961.

The privilege granted to municipal corporations to exercise the power of taxation is absolutely under the control of the Legislature. The only exception to this is, that the Legislature has no power to pass any law impairing contracts, and a charter granted a municipal corporation is not a contract. Notes to Sedgwick, Stat. and Con. Law, 582, 583.

Section 10, article 8, of the Constitution is as follows: "The Legislature shall have no power to release the inhabitants of or property in any county, city or town, from the payment of taxes for State or county purposes, unless," etc. Section 55, article 3, is as follows: "The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability, or obligation of any incorporated town or individual to this State, or to any county, or other municipal corporation therein." Where the Constitution speaks in plain language in reference to a particular matter, the courts have no right to place a different meaning on the words employed because the literal interpretation may happen to be inconsistent with other parts of the instrument in relation to other subjects, and as section 10, article 8, refers to taxation, and only certain things are prohibited, those things not prohibited are left within the control of the Legislature; and the things referred to in section 55, article 3, do not refer to the power of the Legislature over the privilege granted to municipal corporations to levy and collect taxes, and the control that the. Legislature has over these privileges under article 17, Bill of Rights. Warren v. Shuman, 5 Texas, 442; Erwin v. Blanks, 60 Texas, 583; Lufkin v. Galveston, 63 Texas, 437; Railway v. Rambolt, 67 Texas, 654; Cool. Const. Lim., secs. 57, 65, 130.

Where a constitutional provision is made upon a subject, it is presumed to be a complete expression upon that subject, and as section 10 of article 8 of the Constitution is upon the subject of releasing from taxation, it is conclusively presumed to contain all the restrictions that exist against the power of the Legislature upon this the most important part of legislation; and for a stronger reason is this true, as article 8 of the Constitution contains all the restrictions that are to be found upon the direct question of taxation, except those provisions

throwing special restrictions around municipal 'corporations, found in article 11 of the Constitution.   Const., arts. 8, 11; McFadden v. Longham, 58 Texas, 579.

As section 10 of article 8 is the last expression in the Constitution upon taxation, and is found in the only article devoted to taxation, it is a specific expression upon this subject, and controls the more general expression found in section 55 of article 3, if indeed this section has any reference to taxation.   Railway v. Rambolt, 67 Texas, 654; Sedg. on Laws, 360.

The charter of the city of Houston is not a contract, and if a law impairs the obligation of contracts, the persons injuriously affected thereby are the proper parties to apply to set it aside.   Third parties have no standing in court for that purpose.   City of St. Louis v. Shields, 52 Mo., 351; Gilman v. City of Sheboygan, 2 Black, 510.

*John S. Stewart,* for appellee.—No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts shall be made. , The Constitution of the State of Texas is made more comprehensive than that of the United States and most of the States of the Union, in that it not only inhibits laws impairing obligations of contracts, vested rights, and ex post laws, but distinctly, and in express terms, prohibits the Legislature from passing any retroactive law. Const. of Texas, art. 1, sec. 16; Mellinger v. City of Houston, 68 Texas, 37; De Cordova v. City of Galveston, 4 Texas, 480.

The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability, or obligation of any incorporation or individual to this State, or to any county or other municipal corporation therein.   Const., art. 3, sec. 55; Henrietta v. Eustis, 87 Texas, 14; Dugan v. Mayor, 1 Gill & J., 499; City of Oakland v. Whipple, 39 Cal., 112.

The Legislature of the State of Texas has no power to pass any local or special law exempting property from taxation.   Const., art. 3 sec. 56.

"Taxation shall be equal and uniform."   If certain of the taxpayers are compelled to pay taxes and others are allowed by a retroactive law of limitation to defeat the collection of the same tax due from them, then certainly this is not equality in taxation.   The evidence showed that 90 per cent of the tax for the year sued on had been paid, so that the effect of the amendment was to release 10 per cent of the taxes after 90 per cent had been paid.   Const., art. 8, sec. 1; Cool. on Tax., 140-180; Fletcher v. Oliver, 25 Ark., 289; Wilson v. Supervisors, 47 Cal., 91; State v. Indianapolis, 69 Ind., 375; Demoval v. Davidson County, 10 S. W. Rep., 353; Hunsaker v. Wright, 30 Ill., 146.

Section 17 of the Bill of Rights merely stipulates that all privileges and franchises granted by the Legislature, or created under its authority, shall be subject to the control thereof, but does not say that the Legislature shall exceed the powers and limitations recited in the Con-

stitution. The Legislature can withhold the charter of a city if it wishes to, or it can bring about the death of the corporation by repealing the charter, but when it has once chartered the city, it still being a going concern, it can only legislate in reference thereto, in accordance with the Constitution, and not in violation thereof. Wolff v. New Orleans, 103 U. S., 358.

After a tax has been duly levied by a municipal corporation a Statute exempting property from such taxation is unconstitutional. City of Dubuque v. Railway, 39 Iowa, 56.

Limitation laws when made to act retroactively must allow reasonable time in which to bring suit. Wade on Retroactive Laws, secs. 225, 226, 227; Berry v. Randsall, 4 Metc. (Ky.), 292; Pereles v. Watertown, 6 Biss., 79; Scarbrough v. Dugan, 10 Cal., 305; Terry v. Anderson, 95 U. S., 628.

The particular mention of one class, or thing, excludes others, therefore, when section 10 of article 8 of the State Constitution said that the Legislature had the power to release from the payment of taxes levied for State or county purposes in case of great public calamity, it excluded the power to release from the payment of taxes levied for city purposes, even in case of great public calamity. Suth. Stat. Con., sec. 328.

Under the law the city of Houston was the only power that could collect taxes levied by said city to pay its bonded indebtedness. The bondholders could mandamus the city to force it to collect the tax, if it failed or refused to do so; but a judgment against the city for the tax released the property and the delinquent taxpayer from all demands of the bondholder as to that tax. The bondholder could have made himself a party to this suit, but the city, as it legally owed the bonded debt, had full power and the right in its own protection to make all the defenses which the bondholder could have made.

A law seeking to have a retroactive power and to affect the existing rights of bondholders and creditors of the city is invalid. Morris v. State, 62 Texas, 728; Wade on Retroactive Laws, secs. 109, 111; Soutter v. City of Madison, 15 Wis., 30; Bank v. Gunnell, 26 Grat., 131.

Even if the current expenses of the city for the years sued on had been paid, this fact would in nowise release the delinquent taxpayer, and the tax should be collected for the use of the city, to be appropriated to the best purpose as the city government sees fit. The theory of government is that all should bear the burdens of taxation alike, and the proof shows that already had 90 per cent of this tax been collected.

It is admitted that one dollar on every hundred dollars was levied for the purpose of paying the bonded indebtedness of the city of Houston, and that, for the years sued for in this suit, the bonded indebtedness amounted to $1,609,300, and that the same bonded indebtedness was still due and unpaid at the time of the trial of this suit. This being a contract and obligation of appellee, the Legislature of the State of Texas had no power to pass a law, as it did by the passing of the amendment to the charter under consideration, "so as to impair their obliga-

tion by abrogating or lessening the means of their enforcement." City of Sherman v. Langham, 92 Texas, 13; Wolff v. New Orleans, 103 U..S., 358; Morris v. State, 62 Texas, 728; Mt. Pleasant v. Beckwith, 100 U. S., 514.

The opinions of the Court of Civil Appeals upon the question here certified on dissent of the judges were as follows:

MAJORITY OPINION.

"GILL, ASSOCIATE JUSTICE.—This cause was instituted on February 13, 1899, in the District Court of Harris County, by appellee, the city of Houston, against P. M. Ollivier and his codefendants (appellants here) to recover for taxes levied by said city for the years 1892 and 1893, and to foreclose the lien therefor upon certain lands situated in said city. The defendants answered by general denial and by plea of limitation of four years. At the date of the institution of the suit the taxes sued for had been due for more than four years, but from a date prior to the levy until May, 1899, cities were exempt from the operation of the statute of limitation.

"The plea was interposed under the provision in the amendment to section 40 of the charter of the city of Houston, which took effect in May, 1899, and permitted such plea to be urged as to suits instituted prior to such date and pending at the date when it went into effect. The appellee is a municipal corporation with a population exceeding 10,000 and operating under a special charter. In this suit the constitutionality of the law was assailed by the city in so far as it affected pending suits, and the trial court held the law unconstitutional and rendered judgment for appellee.

"Appellants have perfected this appeal and the assignments of error present the one question of the validity of the law.

"It was admitted that the taxes sued for were duly and legally 'laid, levied, and assessed' and became due in the years 1892 and 1893. It was shown that they became a lien upon the property sought to be subjected and were unpaid at the date of the judgment. It was further made to appear that, of the tax sought to be collected, half was to go into the fund for the support of the city government and the remainder was to become a part of the fund created for the payment of the principal and interest of the city's bonded debt. This latter was shown to have amounted at the date of the levy and assessment to more than $1,600,000, and the amount had not been materially reduced at the date of this judgment. About nine-tenths of the property owners of the city had paid their taxes due for the years named, and appellants were among the remaining one-tenth which was delinquent.

"The part of the section of the charter in question provides that 'any delinquent taxpayer shall have the right to plead the statute of limitations of four years in any suit for taxes alleged to be due the city

of Houston, whether such suit has heretofore or may hereafter be brought, and in no case wherein such limitation is plead and the taxes sued for or any part thereof are shown to have been due and payable for four years or more before the suit was instituted shall judgment be rendered for such taxes.  *  *  *'

"Other provisions of the charter provide that no property shall be seized and sold for taxes which have been due for four years or more at the time of such seizure, thus taking from the city the power to collect by any means the tax thus shown to be due for four years, and in effect relinquishing the liability for such delinquent tax.

"The learned trial judge in a strong opinion holding the law invalid assigned, among other reasons for so holding:

"First. That the law is in contravention of section 16, article 1, of the State Constitution prohibiting the passage of retroactive laws.

"Second. That it is in contravention of section 55, article 3, of the State Constitution, declaring that 'the Legislature shall have no power to extinguish in whole or in part the indebtedness, liability, or obligation of any corporation or individual to this State, or to any county, or other municipal corporation therein.'

"This court is unanimously of the opinion that the Legislative control over a municipal corporation is such that it can change its charter at will and control or abolish the powers conferred and the municipality will not be heard to complain.

"That the power to levy and collect taxes when conferred upon a city is a delegated power, a privilege, in which it acquires no vested right, and such power is always subject to legislative control.

"That a tax due by a citizen to a city is not technically a debt, nor is his obligation to the city to pay it, a contract, though the weight of authority is to the effect that the liability is a personal one and an action of debt can be maintained for its collection.  City of Henrietta v. Eustis, 87 Texas, 14, and authorities there cited.

"The contention of appellant, that an uncollected tax is not a part of the property of a city and the Legislature can at will withdraw from the city the power to collect it, and that the law in question does not come within the constitutional inhibition against the passage of retroactive laws, is also believed to be sound, and thus far the propositions urged by appellants are conceded.  We are aware that as to some of these propositions there is respectable authority to the contrary, but we think the vast weight of authority tends to support them.  Many cases are cited in the able briefs of counsel, bearing one way or the other upon the various propositions stated, and they have received careful consideration at our hands.  It is regretted that the business of the court will not permit an extended discussion of the interesting questions thus presented.  But the appeal will be disposed of with reference to section 55 of article 3 of the Constitution, and we content ourselves with a brief discussion of its bearing upon the law in question.

"The inevitable effect of the law under consideration is to extinguish

the liability of appellants for the taxes alleged to be due by them, and this as to pending suits for taxes coming within its provision was its manifest purpose. Attention is called to the fact that no other city in the State is subject to a like provision.

"The power of the Legislature to pass such laws of limitation as may be deemed expedient may not be questioned, nor is it doubted that the power of a municipal corporation to collect a tax already levied may be withdrawn, and the corporation be otherwise permitted to retain its powers and functions, or its existence may be terminated. But in such case the right to collect passes to the State, and such abolition or withdrawal of the power of the corporation does not operate to extinguish the liability for taxes thus due. The State may proceed to collect through other properly appointed agencies, and appropriate the proceeds to the purposes for which they were originally designed. Meriwether v. Garrett, 12 Otto, 472.

"In the case before us no power of the city was in this sense withdrawn. Neither the levy nor the purpose of the levy was declared void or in any respect changed. On the other hand, it is provided in the same section of the law, that if for any cause the city council shall fail in any year to levy the taxes theretofore levied for the purpose of liquidating the debts of the city, and for certain other named purposes, the levy of the previous year shall be enforced.

"The act instead of directly destroying or withdrawing some power theretofore granted the city, simply clothes the delinquent taxpayer with the power to defeat legal proceedings rightfully brought under existing law and then rightfully pending against him.

"It is contended, however, that the power to remit municipal taxes remains in the Legislature unimpaired by the Constitution, by reason of the provisions of section 10, article 8, of that instrument permitting the Legislature to release 'the inhabitants of or property in any county, city, or town from payment of taxes for *State or county purposes* in cases of great public calamity in such county city or town,' and making no provision as to municipal taxes. It is argued that absolute power for the remission of municipal taxes was left in the Legislature by failure to mention them. That instead of conferring a power, it was a mere limitation upon a power inherent in that body, and that the power as to municipal corporations remained.

"It is further contended that, as this is the only utterance in the Constitution upon the question of remission of taxes, section 55 of article 3 must be held not to include within its inhibitions liabilities in the nature of taxes. The rule of construction invoked by appellant is conceded to be sound, but is thought to be inapplicable here, and a majority of this court are of opinion that municipal taxes, levied but uncollected, are a liability on the part of the delinquent, and clearly such a liability as comes within the last cited provision of the Constitution. Indeed the charter itself in this instance declares the owner of property to be personally liable for the taxes thereon.

"By that provision of the Constitution the Legislature is forbidden to pass any law which would 'extinguish any liability, indebtedness, or obligation to the State or any county or city,' and thereby power to extinguish liability for taxes was denied. The Constitution itself furnishes many evidences of the earnest purpose of its framers to render impossible every form of governmental favoritism,—the granting of special privileges, the bestowal of favors. The lightening of the public burdens as to one citizen at the expense of others is contrary both to its spirit and its letter. So it is declared that taxation shall be equal and uniform; but the force of this provision would be defeated if the power remained to relinquish at will the liability thus justly and fairly fixed. For the prevention of these evils this provision was inserted. Its terms are broad enough to cover every conceivable obligation or liability, the remission of which would diminish the public revenue and thereby either directly or indirectly impose a heavier tax upon those not affected by the exemption. In the light of the sweeping effect of this provision it was seen that in case of great public calamity in particular sections or subdivisions of the State the power should rest in some department of the government to grant relief. To this end, section 10 of article 7 was inserted, the exercise of the power being expressly limited to the circumstances which should call it into action.

"The difficulty of formulating tax laws which may surely accomplish the equal distribution of the burdens of government seems to have been fully realized by the framers of the instrument embodying our organic law, and therefore the citizen is hedged about with provisions safeguarding him against the abuse of the taxing power. For these reasons the contention of appellant that the power rests in the Legislature to extinguish the liability of a citizen of a municipal corporation for taxes levied and assessed in a case where the vast majority of his fellow citizens have paid their part of the taxes thus levied, seems inconsistent with the spirit of our institutions and utterly untenable from any point of view.

"But it is urged that the law in question while it may operate to extinguish the liability of the citizen is, after all, but a law fixing the limitations of actions, and that its incidental effect upon such cases as the one before us does not effect its validity. That a power can not be exercised incidentally or by indirection which could not be directly exercised, is elementary. The effect of the act is to relinquish liability. The purpose to accomplish that end is manifest. The ordinary effect of changes in the law of limitation is, not to extinguish any right or liability, but to limit the time within which it may be enforced. The right may be lost or the liability extinguished by delay or negligence, but such result is not chargeable to the law. So in this instance, if the city were required to sue hereafter within a prescribed time, the validity of the act would be beyond question. But as the matter is presented, the city had already undertaken, within a time permitted by the then existing law, to enforce the collection of these taxes. The liabil-

ity was existent and the rights thereunder unimpaired when the act took effect. No opportunity was given to the city to proceed with its remedy. The result·was the effectual exemption of the property of appellants from taxation for the years named. The character and amount of property exempt from taxation is fixed by the Constitution and can not be increased or extended by legislative act. Const., secs. 1, 2, art. 8.

"Of course this court understands that no purpose existed on the part of the lawmaking body to bestow favors or to make distinctions. The general purpose of the act was doubtless to hasten rather than retard the ·collection of public revenue, and its effect will doubtless be to clear the dockets of tax suits and. spur tax collectors to prompt action. The act has been discussed from the standpoint of its effect upon this class of cases alone, and in so far as it would have the effect of defeating actions pending at the time it became effective, it is held to be unconstitutional.

"'The power of the city to raise the question of legislative power is questioned by appellants though the law should properly be held to be in contravention of the Constitution.

"'To this we deem it sufficient to say, that if we are correct in our construction of the scope and meaning of section 55, article 8, then to deny to a city or county the right to raise the question, when a taxpayer seeks protection behind an invalid law, would be to render the constitutional provision nugatory. The provision is not for the benefit of creditors of such corporations, and if the right to invoke it does not rest in the corporation, it can not be invoked at all.

"'The judgment is affirmed.''

### DISSENTING OPINION.

"PLEASANTS, ASSOCIATE JUSTICE.—I respectfully dissent from the opinion rendered in this case ·by a majority of the court, which holds that the amendment to the charter of the city of Houston, by act of the Legislature, which took effect in May, 1899, is in conflict with section 55, article 3, of the State Constitution, which prohibits the Legislature from extinguishing, in whole or in part, the indebtedness, liability, or obligation of any corporation or individual to this State, or to any county, or other municipal corporation therein. The act in question does not purport to be an act for the relief of any individual or corporation from any debt due to or obligation or liability incurred to the city, but said act simply prohibits the city from enforcing by suit or otherwise the collection of any tax due. the city, and which has been due for four years; and in my judgment it is but a rightful exercise of power by the Legislature. An act of the Legislature should not be declared void except when plainly and unmistakably so. Every reasonable presumption must be indulged in support of every legis-

lative act.  Whether taxes come within the literal meaning of the language of section 55 of article 3 of the Constitution is immaterial.  If the Legislature believed that public policy demanded that taxes should be collected by the city within four years after they became due, it was its duty to prohibit their enforced collection after the expiration of that time; and this it might do, although nine-tenths of the citizens of Houston had voluntarily paid like taxes assessed against them for the same years as were the taxes the enforced collection of which was prohibited.  Neither the city, nor any of its citizens, nor the creditors of the city, had any vested right in uncollected taxes.  The power of the Legislature to levy and collect taxes necessarily carries with it the power to prescribe the mode and manner of collecting, and the time within which the collections shall be made; and such power should not be frittered away by judicial construction.  The Constitution must be construed in its entirety, and when this is done, I think that section 55, article 3, can not be interpreted as imposing restrictions upon the Legislature in the exercise of its undoubted power to prescribe a period in which the payment of taxes assessed and levied may be forced.  For the reasons here indicated, I think the decision of this court affirming the judgment of the lower court is erroneous.

"Filed November 1, 1899."

WILLIAMS, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the First District has submitted for our decision the question stated in a certificate of dissent, as follows:

"This is an appeal from a judgment of the District Court of Harris County, rendered in favor of the city against appellants for taxes due by them for the years 1892 and 1893.

"The taxes had been due for more than four years when the suit was instituted and the suit was pending and undisposed of in May, 1899.  Section 40 of the charter of the city of Houston, empowering parties liable to said city for taxes to plead limitation of four years in bar of pending suits of said city for taxes, took effect in May, 1899, and was pleaded by appellants in bar of this action.  The trial court held the provision, in so far as it affected pending suits, to be in contravention of section 55 of article 3 of the State Constitution, and a majority of this court has affirmed the judgment, Justice Pleasants dissenting on the question of the constitutionality of the law.  The constitutionality of the law is the only question presented on the appeal.

"The cause is now pending before us on motion for rehearing, and, on motion of appellants, the following question is respectfully certified for your decision:

"Is the provision in question, in so far as it affects actions by the city for taxes pending at the time the law took effect, in contravention of the State Constitution?

"The taxes sued for were rightfully due by appellants for the years

named. Nine-tenths of the taxes due for the years 1892 and 1893 had been paid by the other property owners of the city.

"The bonded debt of the city, at the date of the judgment, was more than $1,600,000, and half the taxes sued for were to be appropriated for the support of the city government generally and the remainder was part of a provision for the liquidation of the city's bonded debt."

The charter of the city of Houston is made a public law' of which the courts are required to take judicial notice, and the amendment of 1899, not stated in the certificate, is expressly made applicable to pending suits and has the effect, if valid, to extinguish the right of the city to exact payment of taxes which had been due to it for more than four years when such suits were instituted, there having previously been no limitation applicable to such actions. The majority of the Court of Civil Appeals held that the amendment, so far as it applied to pending suits, was in conflict with section 55 of article 3 of the Constitution, which is as follows: "The Legislature shall have no power to release or extinguish or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability, or obligation of any incorporation or individual to this State or to any county or other municipal corporation therein." We agree with the majority of the court in this opinion, and therefore answer the question stated in the affirmative. The majority opinion sufficiently discusses the question, and this makes it unnecessary for us to do more than announce our conclusion.

*Affirmed.*