**Fred SMITH dba Aragon Ballroom and C. D. Wyche, Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**No. 11511.**

Court of Civil Appeals of Texas.

Austin.

Sept. 13, 1967.

Rehearing Denied Oct. 4, 1967.

Second Motion Denied Nov. 1, 1967.

As Amended Jan. 30, 1968.

Small, Herring, Craig, Werkenthin & Shannon, Fred B. Werkenthin, Austin, for appellants.

Crawford C. Martin, Atty. Gen., George Cowden, First Asst. Atty. Gen., A. J. Carubbi, Jr., Executive Staff Asst. Atty. Gen., John R. Grace, Gordon C. Cass, Asst. Attys. Gen., for appellee.

O'QUINN, Justice.

The State brought suit against Fred Smith to collect delinquent admissions

taxes under chapter 21, Title 122A, Taxation-General, V.A.T.S., claimed to have been incurred in operation of the Aragon Ballroom in Dallas County. By its suit the State also sought to foreclose a tax lien on real property used in operation of the place of amusement and claiming the lien first and superior to any interest owned by C. D. Wyche.

The State's claim for admissions taxes covered two separate periods of time. The first period ran from April 1, 1957 to December 31, 1960. The taxes claimed for this period were in excess of $29,000. The second period began April 1, 1963 and ended March 31, 1964. Taxes claimed for this period were about $11,750. The State prayed for total recovery in the amount of $37,507.99 and for foreclosure of the tax lien against the real property.

It appears that throughout each of the two periods described Fred Smith was the owner of the real property used in the operation of the Aragon Ballroom, and C. D. Wyche held a vendor's lien and deed of trust.

The case was tried before the court without a jury. On September 27, 1966, the district court rendered judgment for the State in the sum of $37,507.99 as taxes, penalty and interest, and ordered foreclosure of the tax lien against the real property. The trial court also declared the State's lien first and superior to any interest or lien claimed by C. D. Wyche as holder of the vendor's lien and deed of trust.

Fred Smith and C. D. Wyche have appealed and assign fiftteen points of error.

Appellants make three principal contentions under these assignments. Under the first eleven points, appellants argue that the State failed to prove its right to the admissions taxes. The State's lien is challenged under points twelve through fourteen.

■ The third contention, under the fifteenth point, is to the effect that Article 21.04 is unconstitutional because its enactment by the legislature failed to comply with Article III, section 35, Constitution of Texas, Vernon's Ann.St., requiring the subject of an act or bill to be stated in its title or caption.

This last issue we decided this date in another cause contrary to the contention here made by appellants. We overrule the assignment of error and make reference, for discussion of the question, to the State of Texas v. Rex Rope, Cause No. 11,539, Tex.Civ.App., 419 S.W.2d 890.

The trial court filed findings of fact and conclusions of law. Appellants timely excepted and requested additional findings of fact and conclusions of law. The court refused to make the suggested additional findings, but made an additional finding of fact to the effect that the amount of the taxes and the periods of time in which the taxes accrued were shown by the comptroller's audit placed in evidence at the trial.

Appellants argue that the State had the burden of showing that Fred Smith in fact operated a dance hall, night club, or place of amusement. In addition, it is argued that the State must prove the amount paid as admissions to the dance hall in excess of fifty-one cents, the basis for the tax under Article 21.02(4).

■ We are unable to agree with either of these contentions. Appellants attack the State's evidence offered at the trial because it fails to meet the requirements of Articles 3722 and 3731a, Vernon's Ann. Tex.Civ.St., permitting copies of documents to be introduced if certified.

Proof of tax claims may be made by a written claim showing the amount of the tax due the State when certified to by the Comptroller of Public Accounts or his chief clerk. Article 1.08, Title 122A, Taxation-General.

Article 1.08 as found in Title 122A since enactment of this Title in 1959 reads as follows:

"Art. 1.08 Certified Claim as Evidence

If any person, firm, corporation, or association of persons engaging in or pursuing any occupation on which, under the laws of this State, an occupation tax is imposed, who fails or refuses to pay such tax, and it *becomes necessary to intervene in any manner for the establishment or collection of said tax claims or penalties,* a claim showing the amount of tax due the State, certified to by the Comptroller of Public Accounts or his chief clerk, shall be admissible in evidence in such proceedings and shall be *prima facie evidence* of the contents thereof; provided, however, that *the incorrectness of said claim may be shown."* (Emphasis added). Acts 1959, 56th Leg., 3rd C. S., p. 187, ch. 1.

Appellants acknowledge their awareness of this statute, but deny its application in this case. Appellants argue that use of the word "intervene" in this article limits the proof of a tax claim by this method to "legal proceedings" already instituted in which the State intervenes. Appellants say that in this cause, brought by the State as party plaintiff, the State did not "intervene," and the statute may not be invoked.

Article 1.08 derives from Article 7047a–20, sec. 4 (Acts 1941, 47th Leg., ch. 631, p. 1393). When the legislature placed Article 1.08 in the enactment of Title 122A in 1959, the phrase "in any judicial proceedings" in the old law was deleted and was not carried over into Article 1.08.

■ As the article read prior to 1959, there was reason to construe the law to declare that if "it becomes necessary *to intervene* in any manner for the establishment of collection of said tax claims * * * *in any judicial proceedings,* a claim showing the amount of the tax due" may be placed in evidence if certified. (Emphasis added). But when reference to "any judi-

cial proceedings" was omitted, it seems clear the legislature intended to remove this limitation, and to open use of the certified claim "in any manner" to establish the tax claim.

■ Under a settled rule of statutory construction, the annulment by the legislature of judicial proceedings clearly evidenced a legislative intent to change the law. Putnam Supply Co. v. Chapin, Tex. Civ.App., Eastland, 45 S.W.2d 283, affirmed 124 Tex. 247, 76 S.W.2d 469. The courts are obligated to give effect to this legislative change and modification of the statute. Gateley v. Humphrey, 151 Tex. 588, 254 S.W.2d 98.

The Supreme Court in Gateley v. Humphrey, supra, quoted the following statement of the rule from a decision of the San Antonio Court of Civil Appeals:

"Ordinarily, the mere fact that significant words are omitted from the re-enactment or amendment of a statute imports a conclusive presumption that the Legislature intended to exclude the object theretofore accomplished by the abandoned words." San Marcos Baptist Academy v. Burgess, Tex.Civ.App., San Antonio, 292 S.W. 626, 627, col. 2 (no writ).

■ The object accomplished by the phrase "in any judicial proceeding" as used in the old statute might have been construed to limit an "intervention" to its technical meaning in judicial proceedings. By omitting judicial proceedings from the re-enactment or amendment, the legislature clearly intended for the State to intervene in any manner where to interpose might be necessary to collect occupation taxes and penalties. "To intervene" simply means "to come in or between by way of hindrance or modification; to interpose." (Webster's New International Dictionary, sec. ed., unabridged).

We conclude that by inclusion of Article 1.08 in its present form in Title 122A, the

legislature meant to provide a uniform method by which prima facie proof of claims for occupation taxes might be made in any proceeding. The statute expressly limits the certified claim to prima facie proof and provides that incorrectness of the claim may be shown.

■ The State did not attempt to prove the tax claim against Fred Smith by certified claim for the period April 1, 1957 to December 31, 1960, as authorized by Article 1.08. The State's claim with respect to these taxes was based on copies of documents purporting to be tax reports made by Fred Smith or Mrs. Fred Smith. The copies, without certificate or other authentication, were offered through a witness, W. C. Schulle, assistant director of excise and store tax division of the State Comptroller's office. Mr. Schulle was able to testify that according to reports received by him in the office of the Comptroller, Fred Smith owed taxes in a stated amount. The reports were not offered in evidence, and copies were introduced in evidence over objection of appellants. We do not believe the evidence of Mr. Schulle, even though not disputed, and the uncertified copies of documents purporting to be tax reports will constitute the basis for rendition of judgment for taxes claimed for this period of time.

■ The second period of time for which the State claims taxes runs from April 1, 1963 to March 31, 1964. This claim was established by a certificate of the State Comptroller in the amount of $11,752.66 for admissions taxes incurred by Fred Smith doing business as Aragon Ballroom. Proof of this claim was made in compliance with the requirements of Article 1.08 and established prima facie proof. Appellants objected to introduction of this evidence, but did not offer any evidence of the incorrectness of the claim. We overrule appellant's assignments with respect to this part of the tax claim and hold that the trial court correctly found for the State on its claim

for admissions taxes for the period April 1, 1963 to March 31, 1964.

The second principal issue appellants raise pertains to the State's claim of a first and superior lien on the real property as against C. D. Wyche, the holder of a vendor's lien and deed of trust.

In another cause, decided this date, we have discussed the amending of Article 1.07 by the legislature in 1961, and hold that this article as amended did not repeal the specific lien of the admissions tax under Article 21.04(2). Reference is made to Miller et al. v. Calvert, Comptroller et al., Tex.Civ.App., 418 S.W.2d 869.

■ The principal change accomplished by the amendment of Article 1.07 was to require tax liens on real estate to be recorded in the county in which the property is situated before the lien will be effective as to the interests of "any mortgagee, holder of a deed of trust, purchaser, pledgee, or judgment creditor" who acquired a title or interest in the property before notice of the State's lien was recorded.

There is no evidence that the State recorded its tax lien with respect to the real property on which the Aragon Ballroom was operated.

■ Appellants contend that Article 21.04 does not give the State a lien prior and superior to a pre-existing vendor's lien or deed of trust because this statute does not fix a lien on any interest in real estate except the interest of the owner or operator of the place of amusement. We determined this issue in another case, decided this date, contrary to the contention of appellants, and will not repeat here our discussion of the point. We overrule appellants' contention and refer to The State of Texas v. Rex Rope, Cause No. 11,539, Tex.Civ.App., 419 S.W.2d 890.

■ We believe Article 1.07 as amended was cumulative of Article 21.04(2), and that when the legislature prescribed in Article 1.07 that any tax lien affecting real estate

shall be recorded before the lien will be effective as to interest acquired before such notice by a "mortgagee, holder of a deed of trust, purchaser, pledgee, or judgment creditor", it was intended that liens for admissions taxes affecting real property would be subject to this recording requirement.

In view of the disposition we must make of this case, under which the cause will be remanded to the district court, we now dispose of the issue raised by appellants as to the retrospective effect of Article 1.07 as amended in 1961.

Appellants argue that even if Article 21.04 provided a lien superior to the interest of Wyche, the 1961 amendment of Article of 1.07 will govern not only the State's lien for taxes accruing subsequent to enactment, but also the lien for taxes accruing prior to enactment.

█ We conclude that the amendment in 1961 of Article 1.07 operates prospectively only. We find nothing in the legislative act to show an intent to give the statute retrospective effect.

█ The legislature is denied by the Constitution power to release or extinguish a liability or obligation to the State in whole or in part. Article III, Sec. 55, Constitution of Texas. A tax that has been levied and has become a liability matured under a tax statute is an indebtedness or obligation within the meaning of this provision of the Constitution. State v. Pioneer Oil and Refining Co. (Tex.Com.App.), 292 S.W. 869; Ollivier v. City of Houston, 93 Tex. 201, 54 S.W. 943; Community Public Service Co. v. James, Tex.Civ.App., Austin, 167 S.W.2d 588 (writ ref., W.M.); Reliance Insurance Co. v. Nutt, Tex.Civ.App., Austin, 403 S.W.2d 828 (writ ref., n. r. e.).

The lien asserted by the statutes is so essential to enforcement and collection of the tax that, without express declaration by the legislature, in the amendment of 1961, of intent to extinguish prior liens, we are unwilling to find it was the purpose of the legislature to make Article 1.07 as amended retroactive in application.

We reverse and remand in part, affirm in part and reverse and render in part. As to the first tax period, the judgment of the district court is reversed, and that portion of the cause is remanded for further proceedings in conformity with this opinion, a lien being allowed for such taxes as the State of Texas may prove due by legally competent evidence. As to the second tax period, the judgment of the trial court is affirmed in so far as the judgment awards a recovery for taxes, but is reversed and rendered in so far as the judgment forecloses a lien, and for this tax period the lien is disallowed.

Reversed and remanded in part, affirmed in part and reversed and rendered in part.

## ON MOTIONS FOR REHEARING

The State and appellees have filed motions for rehearing. As this cause is remanded, we feel that further instructions are appropriate.

We believe that a careful reading of Article 1.07 as amended in 1961 discloses that it does not remove or repeal the lien imposed by Article 21.04(2) on all property used by the owner or operator in a place of amusement. Before the lien can be enforced on real estate, notice must be filed in the county where the real estate is situated. (Article 1.07A). The lien becomes valid and effective "against any mortgagee, holder of a deed of trust, purchaser, pledgee, or judgment creditor" when the notice is filed and recorded. The amendment had no application to pending litigation. (Sec. 4 of 1961 Act).

We conclude that the legislature intended not to repeal or disturb the basic principle of imposing the lien for admissions taxes, but did intend to require the State to record the lien, if real estate should be affected, before the lien would apply to the specific interests named in the amendatory statute.

The motions for rehearing are overruled.

Motions overruled.