![Seal of the Attorney General of Texas]

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

January 13, 2004

The Honorable Ben W. "Bud" Childers
Fort Bend County Attorney
301 Jackson Street, Suite 728
Richmond, Texas 77469-3108

Opinion No. GA-0134

Re: Whether a tax abatement agreement entered into under the Property Redevelopment and Tax Abatement Act, chapter 312, Tax Code, may be amended retroactively   (RQ-0081-GA)

Dear Mr. Childers:

On behalf of the Fort Bend County tax assessor-collector, you ask whether Fort Bend County may retroactively amend a tax abatement agreement entered into under chapter 312 of the Tax Code, the Property Redevelopment and Tax Abatement Act.[1]

Chapter 312 of the Tax Code permits a commissioners court to enter into tax abatement agreements with owners of real property located in a reinvestment zone if it "has established guidelines and criteria governing tax abatement agreements by the taxing unit and a resolution stating that [the county] elects to become eligible to participate in tax abatement." TEX. TAX CODE ANN. § 312.002(a) (Vernon Supp. 2004). A commissioners court may not enter into a tax abatement agreement unless it finds that the "terms of the agreement and the property subject to the agreement meet the applicable guidelines and criteria." *Id.* § 312.002(b). The terms of an agreement must include: "the kind, number, and location of all proposed improvements of the property"; county access to assure that improvements are made; limitations on the permissible uses of the property; provisions for recapture of lost property tax revenue if the agreement is not kept; a recitation of all the terms to which the owner of the property has agreed; a provision requiring annual compliance certification by the owner; and a provision that the agreement may be cancelled or modified if the owner fails to comply. *Id.* § 312.205(a) (Vernon 2002); *see also id.* § 312.402(a) (Vernon Supp. 2004) (county tax abatement agreement terms governed by section 312.205).

Section 312.208(a) provides that a tax abatement agreement may be modified or terminated by the parties at any time before its expiration to "include other provisions that could have been included in the original agreement or to delete provisions that were not necessary to the original agreement." *Id.* § 312.208(a) (Vernon 2002); *see also id.* § 312.402(e) (Vernon Supp. 2004) (county

---

[1]*See* Letter from Honorable Ben W. "Bud" Childers, Fort Bend County Attorney, to Honorable Greg Abbott, Texas Attorney General, at 1 (July 17, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

tax abatement agreement may be modified as provided by section 312.208). "The modification must be made by the same procedure by which the original agreement was approved and executed." *Id.* § 312.208(a) (Vernon 2002).

As you explain the situation giving rise to your request, in 2000 Fort Bend County entered into a tax abatement agreement with an entity called RTRON, Ltd. *See* Request Letter, *supra* note 1, at 1.[2] Among the conditions of this agreement were that the "Certified Appraised Value of the Improvements and Tangible Personal Property, excluding inventory, shall be not less than $7,250,000.00 for the term of this agreement" and that "tangible personal property [installed or located on the property] shall have a total Certified Appraised Value of not less than $2,000,000.00, of which at least $600,000.00 shall be new and not have been subject to taxation prior to the date of execution of this agreement." Agreement, *supra* note 2, at 3 (paragraph 4(b), (e)). On December 17, 2002, RTRON requested that the agreement be amended to decrease these appraised value figures to $5,750,000.00 and $1,400,000.00, respectively, and that the amendments be made retroactive to January 1, 2002, so as to apply to the 2002 tax year. *See* Request Letter, *supra* note 1, at 1-2.

Before any such amendment of the agreement was made, "the taxes for tax year 2002 became due. The taxes were assessed at full value because RTRON Ltd. did not meet the requirements of the tax abatement for tax year 2002." *Id.* at 2. We presume from your description of the situation that taxes were assessed at full value because the value of the properties fell below the minimum amounts stipulated in the tax abatement agreement. RTRON paid taxes in the amount of $163,160.35. *See id.*

On March 25, 2003, the commissioners court approved the amendments that RTRON had requested, including the request that the amendment be made retroactive to January of 2002. *See id.* RTRON has since sought a refund of the taxes it paid for the 2002 tax year on the ground that under the amended terms of the tax abatement agreement it did not owe them. *See id.*

Both your request letter and a brief provided by RTRON[3] argue that nothing in the language of chapter 312 precludes the possibility of amending the abatement agreement retroactively. *See* Request Letter, *supra* note 1, at 2-3. While that may be true, this argument does not address either section 11.42 of the Tax Code or whether, in this instance, such a retrospective amendment would violate article III, section 55 of the Texas Constitution.

Chapter 11 of the Tax Code provides that the owner of real property subject to a chapter 312 tax abatement agreement is entitled to a tax exemption as provided by the agreement. *See* TEX. TAX CODE ANN. § 11.28 (Vernon 2001). Section 11.42(a) of the Tax Code generally provides that "eligibility for and amount of an exemption authorized by this chapter for any tax year are

---

[2]*See also* "Tax Abatement Agreement Between Fort Bend County [and] RTRON LIMITED" (attached to Request Letter) [hereinafter Agreement].

[3]*See* Brief from Michael J. Noonan, Attorney at Law, to Nancy S. Fuller, Chair, Opinion Committee, Office of Attorney General, at 1-2 (Aug. 4, 2003) [hereinafter RTRON Brief].

determined by a claimant's qualifications on January 1." *Id.* § 11.42(a) (Vernon Supp. 2004). "A person who does not qualify for an exemption on January 1 of any year may not receive the exemption that year." *Id.* This language clearly does not contemplate a post facto alteration of tax exemption qualifications. Nor does section 312.208(a) indicate that the power to amend the terms of a tax abatement agreement includes the power to modify this statutory rule. *See id.* § 312.208(a) (Vernon 2002).

Even assuming such a modification were permissible, however, the proposed amendment would be forbidden by article III, section 55 of the Texas Constitution. Article III, section 55 reads:

> The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual, to this State or to any county or defined subdivision thereof, or other municipal corporation therein, except delinquent taxes which have been due for a period of at least ten years.

TEX. CONST. art. III, § 55.

As the Interpretive Commentary on section 55 notes, "It was the purpose of the framers of the constitution to render impossible every form of governmental favoritism, including the abandonment by the state of the collection of delinquent taxes." *Id.* art. III, § 55 interp. commentary (Vernon 1997). "They were careful not to provide the legislature with power to extinguish the liability . . . for taxes levied and assessed in a case where the vast majority of other citizens had paid their part of the taxes thus levied." *Id.*

"A tax that has been levied and has become a liability matured under a tax statute is an indebtedness or obligation within the meaning of this provision of the Constitution." *Smith v. State*, 420 S.W.2d 204, 209 (Tex. Civ. App.–Austin 1968), *aff'd*, 434 S.W.2d 342 (Tex. 1968). "[T]axes due are clearly an obligation to a taxing entity that cannot be forgiven under article III, section 55." *Corpus Christi People's Baptist Church, Inc. v. Nueces County Appraisal Dist.*, 904 S.W.2d 621, 625 (Tex. 1995).

Significantly, the constitutional provision that chapter 312 implements does not modify article III, section 55, and chapter 312 may not be construed to authorize the county to violate that constitutional prohibition. Chapter 312 was enacted as the enabling legislation for article VIII, section 1-g of the Texas Constitution, which permits the legislature by general law to authorize "cities, towns, and other taxing units to grant exemptions or other relief from ad valorem taxes on property located in a reinvestment zone for the purpose of encouraging development or redevelopment and improvement of the property." TEX. CONST. art. VIII, § 1-g(a); *see also* Tex. Att'y Gen. Op. Nos. JC-0092 (1999) at 2 (chapter 312 enacted to implement Texas Constitution, article VIII, section 1-g); DM-456 (1997) at 1 (same). This office considered and rejected the argument that chapter 312 of the Tax Code permitted the retrospective abatement of property taxes in Attorney General Letter Opinion 95-090. Finding, as it noted, "nothing in the explicit language

of article VIII, section 1-g suggesting a legislative intent to authorize a municipality to abate delinquent property taxes," the opinion concluded that construing chapter 312 to permit such a practice "would contravene article III, section 55 of the constitution." Tex. Att'y Gen. LO-95-090, at 3-4.

We note that this office has considered whether an economic development grant calculated on the basis of municipal sales taxes that a business had collected would violate article III, section 55. *See* Tex. Att'y Gen. Op. No. GA-0071 (2003). The city provided those grants under a specific statutory scheme enacted pursuant to article III, section 52-a of the constitution, which "establishes that economic development is a legitimate public purpose for public spending." *Id.* at 3. The opinion concluded that the grant program did not violate section 55 because the "municipality has not released or extinguished an obligation to the state or municipality if the business has collected and remitted the sales tax as required by law." *Id.* at 2. Granting of such rebates is, as Opinion GA-0071 notes, entirely distinct from extinguishing obligations. *See id.* at 2-4.

Here we do not address a county's authority to make economic development grants. Rather, we consider whether a county may retroactively amend a tax abatement agreement to provide the taxpayer a basis to seek a refund of monies paid to satisfy a tax obligation. Article III, section 55 prohibits the release of tax obligations, and chapter 312 may not be construed to permit it.

In the instant case, there is no dispute that, as of the date when taxes for 2002 became due, RTRON had failed to meet the terms of the tax abatement agreement, and that consequently it owed Fort Bend County the amount in question. As you note, "While the request for the amendment was pending with Fort Bend County, the taxes for tax year 2002 became due." Request Letter, *supra* note 1, at 2. RTRON agrees that your request letter is "a fair and accurate rendition of the facts and circumstances." RTRON Brief, *supra* note 3, at 1. Accordingly, the amendment approved on March 25, 2003, after 2002 taxes became due, would in effect retroactively expunge a liability. The fact that the debt in question was paid after it became due does not alter the terms of this analysis. Once the debt had become due and owing, it could not be cancelled, but is, in the terms of *Smith,* "an indebtedness or obligation within the meaning of" article III, section 55. *Smith,* 420 S.W.2d at 209. A subsequent attempt to change the conditions under which that debt became such an obligation cannot alter the fact that the taxpayer owed it when it was paid or release the taxpayer from having been under an obligation to pay it. The release of obligations is forbidden by the express language of article III, section 55 of the Texas Constitution. Moreover, to permit a refund to RTRON on the ground that a tax that was proper when paid had somehow been cancelled by a later action by the commissioners court would render article III, section 55 a nullity. *See Spradlin v. Jim Walter Homes, Inc.,* 34 S.W.3d 578, 580 (Tex. 2000) (constructions that "render any constitutional provision meaningless or nugatory" are to be avoided).

## S U M M A R Y

Section 312.208 of the Tax Code, permitting amendment of tax abatement agreements, does not modify the rule established by section 11.42(a) of the Tax Code that a "person who does not qualify for an exemption on January 1 of any year may not receive the exemption that year." TEX. TAX CODE ANN. §11.42(a) (Vernon Supp. 2004). In addition, a retroactive amendment of a tax abatement agreement that extinguishes an existing tax liability violates article III, section 55 of the Texas Constitution.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General, Opinion Committee